Robert E. WALSH and Marie
Eva Walsh

v.

NATIONAL SEATING CO., INC. and
Motor Coach Industries, Inc.

Civ. A. No. 75–1011–T.

United States District Court,
D. Massachusetts.

March 25, 1976.

Andrew C. Meyer, Jr., Lubin & Meyer, Boston, Mass., for plaintiffs.

Parker, Coulter, Daley & White, James F. Meehan, Boston, Mass., for Motor Coach Industries, Inc.

Michael G. Tracy, Stephan A. Moore, Gaston, Snow & Ely Bartlett, Boston, Mass., for National Seating Co.

## MEMORANDUM

TAURO, District Judge.

This is a civil action based on diversity of citizenship wherein plaintiffs seek to recover damages for alleged personal injuries against two corporate defendants. Both defendants have moved to dismiss on the ground that the court lacks personal jurisdiction. For reasons elaborated below, this court grants the motion of defendant National Seating Co., Inc. ("National") but denies the motion of Motor Coach Industries, Inc. ("Motor Coach").

I

■ For purposes of these motions to dismiss the court, as it must, accepts as true plaintiffs' version of the facts.

On March 23, 1973 plaintiff Robert Walsh ("plaintiff") was employed as the driver of a Greyhound Bus and was on the job enroute to Bangor, Maine. Near Prospect, Maine on Route 100, the bus went over some frost heaves. As it did, the driver's seat suddenly gave way and fell to the floor with the plaintiff in it, causing him to suffer severe personal injuries.

Plaintiffs allege in essence that the cause of the accident was negligence in the design and construction of the seat and of the bus. The seat at issue was designed, manufactured and distributed by defendant National, a foreign corporation with its principal place of business in Mansfield, Ohio. The bus at issue was designed, manufactured and distributed by defendant Motor Coach, also a foreign corporation with its principal place of business in Pembina, North Dakota. Both plaintiffs in this case are residents and citizens of the state of Massachusetts.

■ Defendant National was served by a deputy U.S. Marshal at its office in Ohio under the terms of Massachusetts' long-arm statute, Mass.Gen.L. ch. 223A. Defendant Motor Coach was also served under the terms of the long-arm statute and, in addition, under Mass.Gen.L. ch. 181, § 15 and ch. 223, §§ 37–38, which permit substituted service upon the Secretary of the Commonwealth to obtain jurisdiction over foreign corporations "doing business" with the Commonwealth. Such service, if valid under state law, is effective in this court. Fed.R.Civ. P. 4(e).

■

### Jurisdiction over Defendant National

■ Plaintiffs have the burden of proving that this court has in personam jurisdiction over the instant defendants. *Lizotte v. Canadian John Manville Co., Ltd.,* 387 F.2d 607, 608 (1st Cir. 1967); *Aro Manufacturing Co., Inc. v. Automobile Body Research Corp.,* 352 F.2d 400, 403 (1st Cir. 1965), *cert. denied,* 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966).

■ Generally, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits." *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir. 1963) (en banc); *Pulson v. American Rolling Mill Co.,* 170 F.2d 193 (1st Cir. 1948). The Massachusetts Supreme Judicial Court has construed the provisions of the Commonwealth's "long arm" statute,[1] the sole basis of jurisdiction over National, as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *"Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.,* 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972).

■ This court, therefore must determine if plaintiffs' assertion of jurisdiction meets minimum due process requirements. Basically the plaintiffs must demonstrate that the defendant National established "certain minimum contacts" within the Commonwealth so "that the maintenance of the suit [would] not offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), before jurisdiction will be upheld. *See also McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). More specifically, a foreign corporation will not be subject to in personam jurisdiction until it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079 (1st Cir. 1973), provides guidance in interpreting these broad jurisdictional concepts.

> Within this constitutional framework a number of factors, including the nature and purpose of the contacts, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum, and the convenience and fairness to the parties must be considered. *See, e. g., Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 586–87 (1st Cir. 1970); *Aftanase v. Economy Baler Company,* 343 F.2d 187, 197 (8th Cir. 1965).

*Id.* at 1083.

Plaintiff contends that jurisdiction over the defendant National is conferred by Mass.Gen.L. ch. 223A, §§ 3(a), 3(c) or 3(d).[2]

---

1. Mass.Gen.L. ch. 223A, § 3 reads:

 A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

 (a) transacting any business in this commonwealth;

 (b) contracting to supply services or things in this commonwealth;

 (c) causing tortious injury by an act or omission in this commonwealth;

 (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives sub- stantial revenue from goods used or consumed or services rendered, in this commonwealth;

 (e) having an interest in, using or possessing real property in this commonwealth; or

 (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting.

 The *"Automatic" Sprinkler* decision focused specifically on § 3(a) of the long-arm statute. Its application to the other, less open-ended subsections of ch. 223A, § 3 is therefore unclear.

2. *See* note 1, *supra.*

§ 3(a) permits the court jurisdiction over persons as to a cause of action arising from the person's "transacting any business in this commonwealth." The affidavit of Robert G. Brooks, president of defendant National, states that defendant is not licensed to do business in Massachusetts, does not have any sales offices, officers or agents located in Massachusetts, and does not own real estate or inventory within the Commonwealth. The affidavit further states that if the seat in question was made by National, it would have been manufactured in Mansfield, Ohio and shipped to Pembina, North Dakota where the co-defendant, Motor Coach, would have installed it.

Plaintiff does not contest these statements. He rests his claim of minimum contact, however, on three factors: *first,* National put its goods into the "stream of commerce" when it knew or ought to have known that some of them would end up in Massachusetts; *second,* National employed an independent manufacturer's representative, residing in New Jersey, who contacted potential bus purchasers in the Northeast, including Massachusetts, to suggest, without soliciting or accepting orders, that these purchasers specify National seating in their orders to bus manufacturers; *third,* National, on an occasional and irregular basis, mailed needed spare parts directly to Massachusetts parties requesting them.

■ This court holds that none of these involvements by National with the Commonwealth, singly or in the aggregate, constitutes sufficient "minimum contact" to satisfy the Constitution's due process requirements.

Plaintiffs cite the classic case *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), as support for the theory that merely placing an item in the "stream of commerce" knowing that it may eventually end up in the forum state constitutes "transacting business" in the forum state, for purposes of the long-arm statute. Neither *Gray* nor its progeny, however, address themselves to the "transacting business" subsection of the typical long-arm statute. *Gray* concerned itself with an Illinois statute which asserted jurisdiction over natural persons or corporations who committed tortious acts within the state. The defendant in that case was the out-of-state manufacturer of a safety valve used in hot water heaters. The valve, after an intermediate stop in Pennsylvania where it was installed in a heater, ended up in Illinois, exploded and injured the plaintiff. In all the cases growing out of *Gray* a prerequisite to jurisdiction has been an act or injury actually occurring in the forum state. *See, e. g., Atlantic Tubing & R. Co. v. International Engraving Co.,* 364 F.Supp. 787 (D.R.I. 1973). Although there has been considerable discussion of the precise ramifications of the "stream of commerce" theory, *see, e. g., In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 229–32 (6th Cir. 1972), plaintiff has offered the court no cases where it has been used in support of a claim based solely on "transacting business." [3] Indeed, if placing an item in the stream of commerce were in itself sufficient to ground jurisdiction under the "transacting business" subsection of the statute, most of the courts' attempts to gauge whether specific points of contact between a defendant and a forum state suffice to establish "minimum contact" for purposes of jurisdiction would be absurd. Once the defendant was shown to have manufactured goods in interstate commerce, the inquiry would be over.

■ The specific facts offered by plaintiffs, apart from this "stream of commerce" argument, are plainly insufficient to establish jurisdiction under subsection (a). The occasional passage of a

---

**3.** The question of whether placing a item in the "stream of commerce" constitutes a sufficient minimum contact with a forum state to satisfy due process is more appropriately addressed in the discussion of jurisdiction under section (d) of the long-arm statute. As the court notes, *infra,* however, such a claim is precluded in this case by the fact that no tortious act or injury occurred in Massachusetts.

sales representative through Massachusetts is significant, but not a substantial enough contact in itself to create a basis for jurisdiction. It is axiomatic that "mere solicitation" does not constitute "minimum contact" required to ground jurisdiction. *Pulson v. American Rolling Mill Co., supra; Caso v. LaFayette Radio Electronics Corp.,* 370 F.2d 707, 711 (1st Cir. 1966) and cases cited. Here, defendant's uncontradicted affidavit indicates, that the activities of National's independent manufacturer's representative did not even constitute solicitation. Finally, the sporadic shipment of spare parts into the Commonwealth does not constitute a minimum contact sufficient to base jurisdiction, under subsection (a). Moreover, even if these shipments could be construed as sufficient minimum contact, it has not been asserted that National supplied spare parts to the Greyhound company in Massachusetts. In fact, National states that the repairing of all Greyhound vehicles takes place outside the Commonwealth. The injury in this case, therefore, has not been established as one "arising out of" any supply of spare parts, as required by § 3(a).

Apart from plaintiffs' inability to establish minimum contacts under the broad provisions of § 3(a), they have also failed to meet the more specific requirements of §§ 3(c) and (d).

§ 3(c) permits jurisdiction over defendants "causing tortious injury by an act or omission in this commonwealth." This section does not require that the injury actually occur within the Commonwealth, so long as the *tortious act or omission* occurs here. Plaintiff does not dispute that any negligence in the design or manufacture of the seat by National must have occurred at the company's plant in Ohio. He does assert, however, that design changes occurred in the seat in response to recognized defects; that National failed to warn plaintiff or his employer of these defects; and that the failure to warn constituted an "omission" occurring in Mas-

sachusetts for purposes of the long arm statute. He cites as authority for this theory *doCanto v. Ametek, Inc.,* [1975] Mass. Adv.Sh. 1591, 328 N.E.2d 873 (1975).

Under certain circumstances, a failure to warn can constitute an omission sufficient to ground an action in tort. As the Massachusetts Supreme Judicial Court said in *doCanto:*

> When the manufacturer . . . learns or should learn of the risk created by its fault, it has a duty to take reasonable steps to warn at least the purchaser of the risk. *See Carney v. Bereault,* 348 Mass. 502, 506, 204 N.E.2d 448 (1965). One such reasonable step may be to warn at least the purchaser of changes which eliminate or tend to eliminate the risk created by the manufacturer's initial fault.

328 N.E.2d at 878.

But this is not to say that *doCanto* stands for the proposition that the mere allegation of a failure to warn is sufficient to ground jurisdiction under subsection (c) of the long-arm statute. In *doCanto* the parties were apparently Massachusetts residents and the accident occurred in Massachusetts. The long-arm statute was not involved. Here, the accident took place in Maine. Since almost every products liability case has a potential issue of failure to warn, grounding jurisdiction solely on allegation of such an omission might remove any limitation upon a state's assertion of personal jurisdiction and again be beyond "traditional notions of fair play and substantial justice."

Even if *doCanto* could be construed as plaintiff suggests there is no showing that any omission in this case occurred in Massachusetts. The duty to warn imposed by *doCanto* ran from National to the "purchaser", the defendant Motor Coach, located in North Dakota. Any omission to warn, therefore, must be considered as having occurred in

North Dakota.[4] Jurisdiction does not exist under 3(c).

Section 3(d) permits the court to exercise jurisdiction over defendants as to causes of action "arising from" the person's causing tortious injury within the Commonwealth if he "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." The section has two components: the injury and the conduct. There is no dispute that the accident in question occurred in Maine. But the plaintiff argues that the tortious injury also occurred in Massachusetts because: 1) he received treatment for his injuries in Massachusetts, thereby incurring his medical expenses here; 2) he endured pain and suffering after the accident, in Massachusetts; 3) he suffered impairment to his future earning in Massachusetts; 4) plaintiff's wife, the co-plaintiff, was residing in Massachusetts at the time of the accident and thereby, in a sense, suffered her loss of consortium here. Plaintiff asks too much from the phrase "tortious injury." While it is undoubtedly true that plaintiff and his wife *suffered* in Massachusetts this does not mean they were injured here. They suffered here as a result of an injury that occurred in Maine. To accept plaintiff's theory would mean that parties could choose their court by choosing their hospital or place of recuperation.[5]

There being no basis upon which jurisdiction over defendant National may be grounded, plaintiff's complaint against it will be dismissed.

## III

### Jurisdiction Over Defendant Motor Coach

The position of Motor Coach, though close to that of National, poses somewhat different problems, and involves a different statute. Service upon Motor Coach was effected through the Secretary of the Commonwealth, the statutory agent for purposes of service of process for corporations "doing business" within the Commonwealth. Mass.Gen.L. ch. 181, § 15 and ch. 223, §§ 37 and 38.[6]

4. Even if the court were willing to stretch a point and say that National was under a duty to warn Greyhound, there is no allegation that the inevitable, or even proper, place to warn it would have been Massachusetts.

5. The court's conclusion on the issue of injury makes unnecessary any discussion of the second tine of § 3(c), the contact with the state. See footnote 3, supra.

6. Mass.Gen.L. ch. 181, § 15 states, in relevant part:

Every foreign corporation doing business in the commonwealth which has not complied with the provisions of section four [requiring, inter alia, the filing of a certificate of corporate information] shall be deemed to have appointed the state secretary and his successor in office to be its true and lawful attorney upon whom all lawful process in any judicial or administrative proceeding may be served so long as any liability incurred in the commonwealth while it was doing business in the commonwealth shall remain outstanding.

Mass.Gen.L. ch. 223 § 37 states, in relevant part:

In an action against a domestic corporation . . . service shall be made upon the president . . . or other officer in charge of its business . . . . If an officer authorized to serve legal process makes a return on such process that, after diligent search, he can find no one upon whom he can lawfully make service as aforesaid, the court to which such process is returned may upon application issue an order of notice to such corporation . . . . The party making such application shall deliver a copy of such order in duplicate with a fee of two dollars to the state secretary or a deputy or in the office of said secretary.

Mass.Gen.L. ch. 223 § 38 states, in relevant part:

In an action against a foreign corporation, except an insurance company, which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section . . . .

Plaintiffs also attempted to serve Motor Coach via in-hand service in Pembina, North Dakota under the long-arm statute. Mass. Gen.L. ch. 223A. To a large extent, the same problems exist with this basis of jurisdiction

The provisions permitting service upon the Secretary of the Commonwealth to achieve jurisdiction over foreign corporations "doing business" within the Commonwealth differ in important respects, in their theory and application, from the provisions of the long-arm statute. See Part II, supra. The long-arm statute permits a party to reach outside the state to gain jurisdiction over a foreign corporation, when a cause of action arises out of this party's minimum contacts with the state. On the other hand, ch. 181 § 15 simply denominates an individual, the Secretary of the Commonwealth, who may accept service of process on behalf of a foreign corporation whose general activities are sufficient to make it present within the state. There is no need to reach outside the jurisdiction because the party is theoretically "present" in the jurisdiction—though it may lack a specific individual upon whom process may be served. On the face of the statute at least, the cause of action need not arise out of the corporation's activities within the state.[7]

Beyond these general observations, the relationship between the statutes appointing a statutory agent for purposes of service and the long-arm statute is not clear. For example, there has been no indication from the Massachusetts courts that the phrase "doing business" in the former provision, like the "transacting business" in the long-arm statute, is to be construed to the "limits allowed by the Constitution of the United States." The Supreme Judicial Court's "*Automatic*" *Sprinkler* decision, supra, applied by its terms only to the long-arm statute. In *Caso v. Lafayette Radio Electronics Corp.*, 370 F.2d 707 (1st Cir. 1966) the Court of Appeals recognized the "conservative" approach of the Massachusetts courts to ch. 223, § 38 and the predecessor to ch. 181, § 15. 370 F.2d at 710. It is possible that the "*Automatic*" *Sprinkler* language indicates a shift in the offing in the Supreme Judicial Court's view of these statutes, as it was a clarification of their view of the long-arm statutes. However, for purposes of this decision the court assumes the preeminence of the conservative approach of the Massachusetts courts. This being so, the court's work in applying ch. 181, § 15 and ch. 223, § 38 will involve more statutory construction than interpretation of constitutional minimums.

Motor Coach's answers to interrogatories make clear the following. At least five employees of Motor Coach, three service representatives, a parts representative and a service manager, though they reside in North Dakota, regularly work within the Commonwealth. Hausman Bus Sales, the exclusive national sales representative for the defendant, employs one John Stokes, a resident of Needham, Massachusetts as a permanent local manufacturer's representative, whose responsibility is to solicit orders and forward them to defendant's headquarters in North Dakota. Pursuant to this arrangement, phone listings are maintained both in the Boston Area yellow pages and in the West Suburban Boston white pages under the name "Motor Coach Industries, Inc."

---

as were discussed above in connection with defendant National. To the extent that defendant Motor Coach has a larger number and higher quality of contacts with the Commonwealth, which might suggest "minimum contact" and provide jurisdiction under the broad terms of subsection 3(a), jurisdiction is negatived by the fact that this cause of action is not "arising out of" these contacts, as the long-arm statute requires.

Finally, plaintiff attempted to serve process upon a former local employee of Motor Coach, now employed in the Needham, Massachusetts office of Hausman Bus Sales, the exclusive national sales representative of Motor Coach Industries. This ex-employee, however, is not a valid agent for service of process upon Motor Coach. See Fed.R.Civ.P. 4(d)(3).

7. Where the contact with the forum state is slight, however, jurisdiction may require some relationship between the cause of action and the defendant's local activities. See, e. g., Radio Shack v. Lafayette Radio Electronics Corp., 182 F.Supp. 717 (D.C.Mass.1960). See discussion in Caso v. Lafayette Radio Electronics Corp., 370 F.2d 707, 711–712 (1st Cir. 1966).

with a Needham phone number.[8] The defendant has directly solicited business from seventeen companies within the Commonwealth and has sold parts and products directly to eleven companies. Defendant's factory representatives visit the Commonwealth on a regular, predetermined schedule to advise as to correct maintenance procedures and related matters. They also visit the state on a call basis. In 1972 the defendant did $51,267.16 worth of direct business in Massachusetts and from 1973 to the present some $3,124,465.89.

In resisting jurisdiction defendant has depended heavily on *Caso v. Lafayette Radio Electronics Corp., supra.* In this case a Massachusetts citizen sued a New York corporation alleging breach of a contract under which plaintiff was to operate in Vicenza, Italy as defendant's exclusive selling agent. Plaintiff in that case also alleged various misrepresentations in connection with this contract. Subject matter jurisdiction was based solely on diversity. The only contact which the defendant had with the Commonwealth was a retail outlet owned by an independent corporation which was in turn owned but not controlled by the defendant, which serviced products of, and solicited orders for, the defendant parent company. Service was made under ch. 223 § 38.

The court began its discussion of the jurisdictional issue in that case by stating:

> There is no question that Massachusetts could, if it chose, exercise jurisdiction here. Though the defendant's activities in a state are minimal, it does not violate due process to exercise jurisdiction so long as the activities show sufficient "contact" with the state so that it is reasonable to require the defendant to answer a suit there. *International Shoe Co. v. State of Washington,* 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *McGee v. Inter-*

*national Life Ins. Co.,* 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. Here it can be inferred that the defendant obtains a substantial volume of sales through the twin conduits of the Boston store and the mail order catalogues distributed by it. With respect to transactions arising from the activities of Lafayette of Massachusetts it seems clear that the defendant has enough impact on the commerce of Massachusetts to warrant the extension of jurisdiction. Nevertheless, as we have noted before, the question is whether Massachusetts would exercise jurisdiction wherever it could, and the Supreme Judicial Court has generally been conservative in this respect. *Waltham Precision Inst. Co. v. McDonnell Aircraft Corp., supra,* 310 F.2d [20] at 23 [(1st Cir. 1962)].

*Id.,* at 710.

Feeling itself bound by the "conservative" approach of Massachusetts courts in applying ch. 223 § 38, the court went on to analyze the pertinent state court cases.

> From these cases we derive two propositions about the Supreme Judicial Court's treatment of jurisdiction over foreign corporations: (a) despite the language of Mass.G.L. c. 223 § 38, and despite the court's intimations to the contrary, it has never extended jurisdiction over a corporation whose activities in the state amounted to no more than the constitutionally permissible "minimum contact"—it has regularly found more than "mere solicitation"; (b) even when it has found solicitation plus some other activity, it has not extended jurisdiction when the cause of action did not arise out of the activities in Massachusetts. On the other hand, where the corporation's activities more closely approximated the regular conduct of a domestic corporation—that is to say, where the defendant was clearly "doing business" in

---

8. To show a foreign corporation is "doing business" a telephone listing may be a significant contact with the forum state. *Perna v.*

*Dell Publishing Co.,* 240 F.Supp. 268 (D.Mass. 1968).

Massachusetts—the court has allowed jurisdiction for a transitory cause of action. *Trojan Eng'r Corp. v. Green Mountain Power Corp.,* 1936, 293 Mass. 377, 200 N.E. 117.

*Id.,* at 711–12.[9]

The Court of Appeals concluded:

We are satisfied that, generally speaking, the Massachusetts courts would assert jurisdiction over a foreign corporation served under section 38: (a) whenever the corporation's activities affect the commerce of Massachusetts substantially so that the state has an interest in regulating the general conduct of those activities ("doing business"), or (b) whenever the corporation's activities in Massachusetts have so affected the particular transaction at issue that it is appropriate to hear the claim in a Massachusetts court. We are not satisfied that jurisdiction would obtain in the absence of both these conditions.

*Id.,* at 712.

 Even assuming that the Massachusetts courts would still impose a conservation construction upon ch. 223, § 38 and ch. 181, § 15, this court is convinced that the defendant is "doing business" for purposes of jurisdiction. While it is true that the defendant's connections with this jurisdiction are not as substantial as those of the defendant in *Trojan,* the quality and regularity of its connections approximate those of a local corporation, and "affect the commerce of Massachusetts substantially." First, the defendant maintains a listing under its name with a resident sales representative. The fact that this person has not been employed directly by the defendant since 1972, but is instead an employee of defendant's sole national sales representative, while it might be relevant to the issue of agency, does not eliminate the

presence of this individual as a factor to be weighed in deciding whether Motor Coach is "doing business" in the Commonwealth for purposes of service upon the Secretary of State. Second, this court finds it highly significant that Motor Coach's service personnel pass through this state on a regular, routine basis and that they also come to this state on a call basis.

In *Waltham Precision Instrument Co. v. McDonnell Air Corp.,* 310 F.2d 20 (1st Cir. 1962), cited in the *Caso* case as authority for the proposition that Massachusetts courts have been conservative in their construction of these statutes, the Court of Appeals stated:

As we read the Massachusetts cases, even those construed to hold "mere" solicitation sufficient for jurisdiction, see *Remington Arms Co. v. Lechmere Tire & Sales Co.,* 339 Mass. 131, 158 N.E.2d 134 (1959), the foreign corporations were engaged in a regular, continuous and systematic course of business activity. The "solicitation" was not an *ad hoc* adventure but a sustaining endeavor with a significant degree of permanency and continuity. Typically, as in *Remington Arms Co. v. Lechmere Tire & Sales Co., supra,* the "solicitation" is backed up with a local office and staff.

The court added in a footnote:

However, the physical presence of an office within the Commonwealth is not a prerequisite to jurisdiction. *Jet Mfg. Co. v. Sanford Ink* [330 Mass. 173, 112 N.E.2d 252, 1953.]

*Id.,* at 24.

The presence of Motor Coach in the Commonwealth is backed by a local office and a staff. A resident of the Commonwealth represents Motor Coach in the Commonwealth and maintains phone listings in its name. It is irrelevant that

**9.** The court then added in a footnote:

In *Trojan* a substantial number of the defendant's officers and directors resided in Massachusetts. The president maintained a permanent office in Boston, and half the directors' meetings were held there. Most of

the major policy decisions of the corporation were made by the officers in Boston, and nearly every corporate function except the actual operation of its physical assets was conducted there.

the considerable additional "staff" maintained by Motor Coach within the Commonwealth does not reside here. It is sufficient that this staff—the three service representatives, the parts representative and the service manager—appears in the Commonwealth on a regular, frequent and pre-determined basis, and that, in the event of need, it can be solicited on a call basis within a matter of days or, presumably in an extreme enough emergency, within hours. Many a local plumber cannot boast of such a close and solicitous contact with his customers.

Finally, this court believes that the amount of business done by Motor Coach within this state—over $50,000 in 1972 and over $3,000,000 in the past three years—affects the commerce of the Commonwealth substantially enough that the state does have an interest in the general conduct of Motor Coach's business. *Caso v. Lafayette Radio Electronics Corp., supra,* 370 F.2d at 712.

As this court has noted, *supra,* note 6, this case is not "arising out of" Motor Coach's contacts with the Commonwealth. Whatever confusion existed about the necessity that a cause of action arise out of contacts with the state before service upon the Secretary will be permitted was effectively laid to rest in the *Caso* decision. There the Court of Appeals concluded that "solicitation-plus" would not ordinarily be sufficient to ground jurisdiction unless the cause of action arose from the defendant's business within the Commonwealth, *except* "where the corporation's activities more closely approximated the regular conduct of a domestic corporation." 370 F.2d at 711. It also suggested that where the activities of the corporation had a sufficiently substantial impact on the Commonwealth, the connection between the cause of action and the activities need not be present. Since this court finds that Motor Coach's activities within the forum do approximate those of a domestic corporation, and do substantially affect the commerce of the Commonwealth, the fact that the instant case did not arise from Motor Coach's activities within this state cannot defeat jurisdiction.

To so hold does not offend constitutional standards governing jurisdiction.

When, as here, a foreign defendant's contacts with a forum are substantial, a suit may be maintained though it concern a matter having no connection with the forum. *Perkins v. Benquet Consol. Mining Co.,* 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.

*Volkswagen Interamericana S. A. v. Rohlsen,* 360 F.2d 437 at 440 (1st Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966).

In *Corbin v. Bastian Blessing Company,* 265 F.Supp. 338 (D.Mass.1967), the court maintained jurisdiction over a defendant under the "doing business" provisions of § 38, where defendant's contact was a resident district sales manager who called on a list of 40 customers every 90 days. The company did about $200,000 per year of business within the state. Jurisdiction was upheld despite the fact that the cause of action did not arise from these contracts with the state. For a similar case under the analogous Rhode Island statute where jurisdiction was upheld, see *Samson Cordage Works v. Wellington Puritan Mills,* 303 F.Supp. 155 (D.R.I.1969). In two more recent cases denying jurisdiction, *Wilson v. Holiday Inn Curacao N. V.,* 322 F.Supp. 1052 (D.Mass.1971) and *Farkas v. Texas Instruments, Inc.,* 50 F.R.D. 484 (D.Mass. 1969), *modified on other grounds,* 429 F.2d 849 (1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971), *rehearing denied,* 402 U.S. 990, 91 S.Ct. 1658, 29 L.Ed.2d 156 (1971), the involvement of defendants with the Commonwealth was far less extensive than that of Motor Coach in this case.

Defendant Motor Coach has "purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298. Having

availed itself of these laws, defendant cannot now avoid the present "distasteful consequences" of a law suit. *Volkswagen Interamericana S. A. v. Rohlsen, supra,* 360 F.2d at 440.

### IV

The motion to dismiss of defendant National Seating Company will be granted; that of Motor Coach will be denied. An order will issue.