C. H. Babb Co., Inc. *vs.* A. M. Manufacturing Company.

Worcester. April 22, 1982. — August 4, 1982.

Present: Brown, Perretta, & Kass, JJ.

*Jurisdiction*, Nonresident.

On a motion by a nonresident corporation to dismiss a third-party complaint for lack of personal jurisdiction, the third-party plaintiff's affidavit presented uncontroverted jurisdictional facts sufficient to satisfy due process requirements and to meet the prerequisites of G. L. c. 223A, § 3(*a*), with respect to the doing of business in the Commonwealth. [292-295]

Civil action commenced in the Superior Court Department on November 30, 1979.

The case was heard by *Meagher*, J., on a motion to dismiss.

The case was submitted on briefs.

*L. James Miller* for C. H. Babb Co., Inc.

*David D. Dowd* for A. M. Manufacturing Company.

Perretta, J. Kalil Bakery, Inc. (Kalil), brought an action against Babb for damages arising out of its purchase of allegedly defective bakery machinery from Babb, which in turn, caused a complaint for indemnification to be served upon the manufacturer, A. M. Manufacturing Company (A.M.). See Mass.R.Civ.P. 14(a), 365 Mass. 760 (1974). A.M., a nonresident, moved to dismiss Babb's third-party complaint under Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974). The motion was allowed, and judgment entered in accordance with Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). Babb appeals and argues that Massachusetts has personal jurisdiction over A.M. because A.M. has transacted business and has contracted to supply services or things in Massachusetts. G. L. c. 223A, § 3(*a*) and (*b*). We reverse the judgment.

In moving to dismiss Babb's third-party complaint, A.M. submitted an affidavit signed by its president and sole share-holder, one Harold Atwood, who set out the following facts. At the time of the sale of the machinery to Kalil, A.M. "had only one place of business, that being, Dolton, Illinois," it was not licensed to do business in Massachusetts, it had no salesmen or offices here, and it advertised in a nationally circulated bakery magazine. The sale in question was con-ducted in a manner consistent with A.M.'s "general prac-tice," that is, "the equipment was shipped directly to C.H Babb Co., Inc. by public carrier, F.O.B. Dolton, Illinois." Atwood further stated that Babb was "an independent job-ber," that "[a]ll sales are consummated and shipped in Illi-nois," that Babb "did not function in a representative capacity for A.M.," and that Babb "is an independent busi-ness, entirely separate and apart from A.M." In addition to these specific facts, Atwood made the conclusory statements that A.M. "transacts no business in the Commonwealth of Massachusetts," and that A.M. has no "direct business con-tact with Massachusetts."

"Confronted with a motion under Mass.R.Civ.P. 12(b)(2), . . ., a plaintiff 'has the burden of establishing the facts upon which the question of personal jurisdiction over a de-fendant is to be determined.'" *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 151 (1978), quoting from *Nichols Associates* v. *Starr*, 4 Mass. App. Ct. 91, 93 (1976). In support of its claim that personal jurisdiction over A.M. exists, Babb presented an affidavit prepared by its presi-dent, one William Foran. He asserted that Babb had done business with A.M. since 1964, that A.M. "has actively and purposefully sought the acquisition of business in Massachu-setts through" Babb, that A.M. had "encouraged" Babb's agents and employees "to solicit sales" of A.M.'s products in Massachusetts, that A.M., "on a regular basis," refers po-tential Massachusetts customers of A.M.'s products to Babb, that A.M. "transmits by mail and telephone the names of po-tential customers for its products in Massachusetts to [Babb] with instructions to use its best efforts to conclude a sale,"

and that A.M. "has initiated numerous written and telephone communications with [Babb] for the purpose of obtaining new business in Massachusetts." Foran also represented that during the sixteen-year relationship between Babb and A.M., Babb had "purchased and distributed equipment valued at approximately $926,000,"[1] and had paid A.M. by checks drawn on Massachusetts banks. According to Foran's affidavit, Babb "performs warranty servicing for A.M. . . . products in use in Massachusetts with the approval, support and assistance of A.M."[2] Foran attached to his affidavit various mailings from A.M. addressed to the "[a]ttention" of "All Dealers, Distributors, Jobbers and Sales Agencies" and announcing new A.M. products and price listings.

Babb has controverted A.M.'s affidavit, contrast *Nichols Associates* v. *Starr*, 4 Mass. App. Ct. at 94-95, and the question to be decided is whether Babb has presented uncontroverted jurisdictional facts sufficient "to survive due process scrutiny" and "to satisfy at least one of the statutory prerequisites." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 6 (1979). Babb relies upon § 3(a), and thus "[f]or the purpose of our examination here, these considerations coalesce around the following inquiry: whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defend-

---

[1] Foran further detailed that of that amount, $107,554 worth of equipment was purchased in 1978, 1979, and 1980. How much of this equipment was distributed to Massachusetts purchasers is not expressly stated. We note, however, that Atwood described A.M.'s shipping practice to be direct shipment to Babb in Massachusetts, F.O.B. Dolton, Illinois. Further, Foran states in his affidavit that Babb "is the exclusive distributor of A.M. products in Massachusetts." While Atwood's description of Babb as an "independent jobber" would appear to contradict a distributor status, the notion of exclusivity in Massachusetts is not refuted.

[2] Foran also related that in 1978, Babb received some financial support from A.M., when it paid a portion of Babb's expenses from a trade show at which Babb, upon A.M.'s request, displayed some of A.M.'s products. Foran does not state, however, whether the show was held in Massachusetts or whether Babb displayed only A.M.'s products.

ant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 7.

While the parties have collected those cases which in their views are most similar to their respective positions, "[e]ach case must turn on its own facts." *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102, 105 (1980). For a discussion of those cases wherein it was concluded that the defendants did not have sufficient contacts see *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 8-9.

A.M. places principal reliance upon *Walsh* v. *National Seating Co.*, 411 F.Supp. 564 (D. Mass. 1976), where the court rejected a claim that the defendant was transacting business in Massachusetts within the meaning of § 3(*a*). That case, however, is readily distinguishable on the basis of the following facts. There the plaintiff claimed that the defendant "put its goods into the 'stream of commerce' when it knew or ought to have known that some of them would end up in Massachusetts." *Id.*, at 569. In the instant case, the goods were sent directly to Babb. See *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"). In *Walsh* v. *National Seating Co.*, 411 F.Supp. at 569-570, an independent manufacturer's representative who lived in New Jersey made only an "occasional passage" through Massachusetts. He "contacted potential bus purchasers in the Northeast, including Massachusetts, to suggest, without soliciting or accepting orders, that these purchasers specify National Seating in their orders to bus manufacturers." Finally, "National, on an occasional and irregular basis, mailed needed spare parts directly to Massachusetts parties, requesting them." *Id.* at 569.

We need not repeat the jurisdictional claims set out in the affidavit submitted by Babb. It is sufficient to state that

considering the nature, extent, and continuity of A.M.'s acts, we conclude that A.M. has transacted business in Massachusetts. See *Whittaker Corp.* v. *United Aircraft Corp.*, 482 F.2d 1079, 1083 (1st Cir. 1973); *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 9-10. A.M.'s "contacts with the forum were deliberate and not fortuitous, such that 'the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise.'" *Id.* at 11, quoting from *Product Promotions, Inc.* v. *Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974).

We do not consider the doctrine of forum non conveniens in relation to the jurisdictional question before us, because A.M. has made no assertion that it "would be unduly burdened by being required to defend this suit in Massachusetts." *Carlson Corp.* v. *University of Vt.*, 380 Mass. at 109. See G. L. c. 223A, § 5. Since we conclude that Babb has presented jurisdictional facts sufficient to survive due process scrutiny and to satisfy § 3(*a*), we need not consider whether jurisdiction could also be found under § 3(*b*).

*Judgment reversed.*