**LTX CORPORATION, Plaintiff,**

v.

**DAEWOO CORPORATION and Daewoo Electronics Co., Ltd., Defendants.**

**No. CIV.A. 96–11278–GAO.**

United States District Court,
D. Massachusetts.

Sept. 16, 1997.

Joseph L. Kociubes, Melissa M. Thompson, Bingham, Dana & Gould, Boston, MA, for Plaintiff.

Doron R. Ezickson, Gordon T. Walker, Steven W. Kasten, McDermott, Will & Emory, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The defendants, Daewoo Corporation ("Daewoo Corp.") and Daewoo Electronics Co., Ltd. ("Daewoo Electronics"), have moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b) for lack of personal jurisdiction and insufficient service of process or, in the alternative, to dismiss on grounds of *forum non conveniens.* For the reasons stated below, the defendants' motion to dismiss is granted.

### I. Plaintiff's Claims

The plaintiff, LTX Corporation ("LTX"), is a Massachusetts corporation that manufactures and sells semiconductor testing equipment worldwide. Daewoo Electronics, a Korean corporation, manufactures refrigerators, washing machines, and consumer electronics, including televisions, VCRs, microwave ovens, audio equipment, and PC monitors. Daewoo Corp., also a Korean corporation, is a trading company that buys products from Daewoo Electronics for distribution. Neither defendant is registered with the Massachusetts Secretary of State as a foreign corporation doing business in Massachusetts. Neither defendant itself maintains an office, bank account, or telephone listing in the commonwealth. Moreover, neither defendant directly employs any agents or employees in Massachusetts, and neither has appointed a

resident agent for service of process in Massachusetts.

LTX alleges that it agreed to sell, and the defendants agreed to buy, forty-six semiconductor testing systems for a total price of more than $50 million.[1] The negotiations for the agreement occurred in Korea and Singapore. The testing systems, to be manufactured in part in Massachusetts, were to be used in a Daewoo facility in Singapore.

LTX further alleges that after the contract was signed but before the equipment was delivered, the world prices for such testing systems fell drastically. In June, the defendants notified LTX that they would not honor the contract, claiming that the Daewoo employee who had negotiated it and who purportedly signed the purchase orders, K.C. Nam, lacked the authority to bind the defendants.

Shortly afterward, LTX filed this action. The defendants moved to dismiss and to stay discovery pending disposition of their motion to dismiss. Their motion to stay discovery was granted.

## II. Discussion

### A. Personal Jurisdiction

It is the plaintiff's burden to establish that personal jurisdiction exists over the defendants in this forum. *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992); *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 979 (1st Cir.1986). The plaintiff must demonstrate both that personal jurisdiction is authorized by Massachusetts law and that the exercise of such jurisdiction comports with due process. *Good Hope Indus. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76, 79 (1979).

LTX claims that the defendants have engaged in commercial activities within Massachusetts by:

1. Selling electronics and other products under the Daewoo name and other labels in retail stores throughout Massachusetts;

2. Establishing links with the higher educational system in Massachusetts by recruiting employees at M.I.T. and sending executives to management programs at Harvard and M.I.T.;

3. Creating joint ventures with Massachusetts companies, including Data General Corporation of Westboro and Powercell Corporation of Cambridge;

4. Contracting with Massachusetts manufacturers, including LTX itself;

5. Manufacturing a subcompact automobile for sale by General Motors during the 1980s and early 1990s throughout the United States, including Massachusetts;

6. Manufacturing DIRECTV to be marketed and sold by General Motors and Pegasus Communications Management Company throughout the United States, including Massachusetts;

---

1. According to the allegations of the complaint, in December, 1995, the parties executed a general letter of intent which designated LTX as "an eligible supplier" for such equipment and setting out some proposed delivery dates, the earliest being June 30, 1996. Compl., ¶ 7 and Ex. A. The price for the equipment was "to be discussed later." It also noted that the quantities of equipment listed "are changeable." Compl., Ex. A. The parties also executed a document entitled, "General Terms and Conditions," which identified the "Buyer" as Daewoo Electronics and the "Seller" as "LTX Corporation and its subsidiaries." Compl., Ex. B. The "General Terms and Conditions" did not specify the purchase or sale of any particular quantities at any particular price, but rather dealt with matters such as delivery and payment terms, warranties, training and technical support, remedies, and software licensing. *Id.* The "General Terms and Conditions"

also provided that "[a]ny disputes arising out of the contract" were to be settled by arbitration in accordance with the rules of the International Chamber of Commerce. *Id.*, ¶ 15, at 4.

Beginning in January, 1996, a series of purchase orders were executed on a form bearing the heading, "Daewoo Corporation, Semiconductor Division." Compl., ¶ 9 and Ex. C. The purchase orders were addressed to "LTX Korea" as the supplier, and listed "LTX Asia International, Inc." as the "maker" and "shipper." Each purchase order was signed "Kee Chong Nam, General Manager/Purchasing Dept." Each specified a quantity of equipment to be purchased for a price expressed in dollars. Four of the six purchase orders attached to the complaint bear the words, "Total F.O.B. San Francisco Airport U.S.A.," while the other two bear the words, "Total F.O.B. Westwood, MA, Airport U.S.A." *Id.*

7. Owning substantial interests in Leading Edge Products, Inc. located in Westboro, Mass., and Sutek Corporation located in Hudson, Mass.;

8. Making UCC filings with the Massachusetts Secretary of State to perfect security interests in property in Massachusetts;

9. Owning real property in Cambridge through Daewoo U.K., a corporation said to be part of the general Daewoo multinational trading enterprise; and

10. Participating in litigation in Massachusetts courts as defendant, counterclaim plaintiff, and bankruptcy trustee.

On the basis of these contacts, LTX claims that personal jurisdiction is authorized by either of two Massachusetts statutes, Mass. Gen. L. ch. 223A, § 3 (1993) or Mass. Gen. L. ch. 223, § 38 (1976).

### 1. The Long–Arm Statute

The Massachusetts long-arm statute provides in relevant part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

. . . . .

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;

Mass. Gen. L. ch. 223A, § 3.

Section 3(a) does not confer jurisdiction over the defendants in this case. Though the "transacting any business" clause has been interpreted so broadly that it may be assumed that the defendants' alleged activities, if substantiated, would qualify,[2] there is no plausible claim that the cause of action at issue here (the defendants' alleged breach of contract) "arises from" any of the defendants' activities within Massachusetts. "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." *Tatro v. Manor Care. Inc.*, 416 Mass. 763, 625 N.E.2d 549, 553 (1994). Even under a liberal interpretation of the statute, LTX's claim for breach of a contract signed in Korea for equipment to be delivered to Singapore cannot be said to be "made possible by" or lying "in the wake of" any of the defendants' purported business transactions in Massachusetts, as LTX identifies them.

Neither does § 3(d) of the long-arm statute confer jurisdiction over the defendants, as LTX claims. Section 3(d) is typically available to sustain jurisdiction over out-of-state defendants who manufacture products which harm Massachusetts residents. *See Mark v. Obear and Sons, Inc.*, 313 F.Supp. 373, 376 (D.Mass.1970). LTX argues that if (as the defendants appear to claim) Nam, the person who negotiated the contract for Daewoo, could negotiate a $50 million contract over several months without Daewoo's knowledge or authority, then the defendants must have been negligent in hiring, retaining, and supervising him. As a result of this negligence by the defendants, LTX was tortiously injured and suffered losses in Massachusetts.[3]

---

**2.** *See Johnson v. Witkowski,* 30 Mass.App.Ct. 697, 573 N.E.2d 513, 523 (1991) (transacting business test "embrace [s] any purposeful acts performed in Massachusetts, whether personal, private, or commercial").

**3.** Specifically, LTX alleges that it suffered losses because it had to pay for the salaries and expenses of its Massachusetts employees who worked on the deal. LTX also claims injuries from its need to increase its production and hire more Massachusetts employees, only to have to lay them off as a result of the disavowed order. It also lost other business opportunities because it devoted its time and resources to the deal. Finally, LTX claims that its good will was harmed and its stock price dropped as a result of negative newspaper and industry reports about the cancellation.

Because the issue is resolved on other grounds, it need not be decided whether these issues can properly be located "in" Massachusetts, and thus satisfy that aspect of § 3(d)'s grant of long-arm

The essence of LTX's claim is that Daewoo failed to fulfill its promise to buy the testing equipment. So that it might take advantage of § 3(d), LTX tries to metamorphose its essentially breach of contract claim into a tort claim: "negligent supervision" of an employee. Thus, LTX avers that, by negligently failing to supervise Nam, the defendants created the danger that Nam would negotiate or execute an unauthorized contract with LTX, thus damaging LTX when the Daewoo entities refused to honor it. The contrivance is clever but unavailing.

An employer does owe a general duty to take reasonable care to supervise its employees as they act in the course of business so that the employees do not commit *tortious* injury to third parties. *See Restatement (Second) of Agency* § 219 (1958). Thus, for example, an employer may be held responsible for an employee's negligent operation of an automobile, *see Konick v. Berke, Moore Co.*, 355 Mass. 463, 245 N.E.2d 750, 753 (1969), or for an employee's assault of a third party. *See Dwyer v. Hearst Corp.*, 3 Mass.App.Ct. 76, 323 N.E.2d 738, 740 (1975). Similarly, the principal may be liable for the agent's misrepresentations. *See In re Atlantic Fin. Management, Inc.*, 784 F.2d 29 (1st Cir.1986).

Here, however, LTX would argue that the employer also has a tort duty to use care that its employees do not commit *contract* injuries. Apart from its being entirely without any genuine authoritative support, the theory is unnecessary. The law of agency supplies third parties like LTX with all the protection they need in this regard. The principal is bound by the agent's contract-making behavior when the agent acts within the scope of the agency. The agent's authority may be actual, where the employer expressly or impliedly grants it, or it may be apparent, where the employer permits the fact of authority to appear. *See Restatement (Second) of Agency* §§ 7–8, 50–51 (1958).

*See also Binkley Co. v. Eastern Tank, Inc.*, 831 F.2d 333 (1st Cir.1987) (principal may be bound by agent's negotiation and execution of purchase order). It is the latter circumstance that would fit LTX's claim here: the defendants (negligently or otherwise) permitted Nam to appear and behave as if he had contract-making authority, and having thus apparently authorized him, they are bound by the contract Nam made and must either honor it or pay damages. This is a perfectly sound theory. It is a contract, not a tort, theory. It does not permit resort to § 3(d) of the Massachusetts long-arm statute.

### 2. *Section 38*

LTX's argument that personal jurisdiction over the defendants is authorized by Mass. Gen. L. ch. 223, § 38 is also without merit. That section provides in relevant part:

> In an action against a foreign corporation ... which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section relative to service on domestic corporations in general, instead of upon the state secretary under section fifteen of chapter one hundred and eighty-one.

Mass. Gen. L. ch. 223, § 38. The preceding section, § 37, details the procedure by which service may be made on a domestic corporation. Mass. Gen. L. ch. 223, § 37.

The relationship of § 37 and § 38 is of critical importance. While § 38 does provide a viable basis for asserting personal jurisdiction over foreign corporations, *see Buckeye Assocs., Ltd. v. Fila Sports, Inc.*, 616 F.Supp. 1484, 1491 n. 9 (D.Mass.1985), it nonetheless requires that service be made in compliance with § 37. Section 37, in turn, requires that service be made in-hand within Massachusetts.[4] In this case, LTX served

jurisdiction. *See Cunningham v. Ardrox, Inc.*, 40 Mass.App.Ct. 279, 663 N.E.2d 577, 579 (1996) ("While manifestations, effects, and consequences of an out-of-State injury may be experienced in Massachusetts, they do not constitute 'injury in this commonwealth' within the mean-

ing of § 3(d).") (citing *Crocker v. Hilton Int'l Barbados, Ltd.*, 976 F.2d 797, 800 (1st Cir.1992)).

**4.** That § 37 requires in-hand, in-state service is evident from its language:

the defendants in Korea by mail. Such service was not proper under § 38. *See Howse v. Zimmer Mfg., Inc.*, 109 F.R.D. 628, 631 (D.Mass.1986) (defendant served by registered mail was not properly served under § 38 where § 37 did not provide for service by registered mail).

This is not merely technical quibbling. Section 38 is not a long-arm statute; it does not allow Massachusetts to "reach out" and bring a foreign corporation within its jurisdiction by means of extraterritorial service. *Compare* Mass. Gen. L. ch. 223A, § 3. Rather, § 38 enables Massachusetts to exercise jurisdiction over foreign corporations whose conduct in Massachusetts approximates that of regular domestic corporations and thus can be deemed to be physically "present" in Massachusetts. *Caso v. Lafayette Radio Elecs. Corp.*, 370 F.2d 707, 711–12 (1st Cir. 1966); *see also Walsh v. National Seating Co.*, 411 F.Supp. 564, 572 (D.Mass.1976) (explaining the general relationship between chapter 223A, § 3, the state's long-arm statute, and chapter 181, § 15, the statute authorizing substituted service on the Secretary of State for certain foreign corporations). In the cases where § 38 jurisdiction has been upheld, some human representative of the defendant was served in-hand within Massachusetts. *See Campbell v. Frontier Fishing and Hunting, Ltd.*, 10 Mass.App.Ct. 53, 405 N.E.2d 989, 990 (1980); *Jet Mfg. Co. v. Sanford Ink Co.*, 330 Mass. 173, 112 N.E.2d 252 (1953); *Stein v. Canadian Pac. S.S.*, 298 Mass. 479, 11 N.E.2d 457, 459 (1937); *Atlantic Nat'l Bank of Boston v. Hupp Motor Car Corp.*, 298 Mass. 200, 10 N.E.2d 131, 132 (1937); *Trojan Eng'g Corp. v. Green Mountain Power Corp.*, 293 Mass. 377, 200 N.E. 117, 119 (1936).

LTX's belated appeal to § 38 is unavailing for the simple reason that, when it commenced this case, LTX did not invoke that statute to acquire jurisdiction over the defendants. The defendants were served with process under the long-arm statute, not under § 38. As a matter of Massachusetts procedure, for this case § 38 is beside the point.

Moreover, any prospective initiative to undertake service conforming to the procedural requirements of § 38 would be futile because, notwithstanding the possibility that the defendants' business contacts with Massachusetts might be sufficient to justify jurisdiction as a matter of statutory construction of § 38 (a matter not free from doubt),[5] such an assertion of jurisdiction over these defendants would deny them due process under the applicable constitutional standard.

### 3. Due Process

Because the Court has determined that personal jurisdiction does not exist under Massachusetts law, its inquiry into the constitutional aspect need only be briefly stated.

█ Within the constitutional due process analysis, courts have recognized two types of personal jurisdiction—general jurisdiction and specific jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir.1995). In this case, specific jurisdiction clearly does not apply. The cause of action cannot be said to arise from the Massachusetts activities of either defendant. *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 88 (1st Cir.1990).

█ Determining whether general jurisdiction exists involves two steps. The first is to determine whether the individual defendants have minimum contacts with the forum state. The second step is to determine "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St.*

---

In an action against a domestic corporation ..., service shall be made upon the president, treasurer, clerk, resident agent ..., cashier, secretary, agent or other officer in charge of its business, or, if no such officer is found **within the county**, upon any member of the corporation. If an officer authorized to serve legal process makes a return on such process that, after diligent search, he can find **no one upon whom he can lawfully make service** as aforesaid, the court to which such process is returned may upon application issue an order of notice to such corporation, directing it to appear and answer within a designated period.
Mass. Gen. L. ch. 223, § 37 (emphasis added).

5. *See Caso*, 370 F.2d at 710–12; *National Seating Co.*, 411 F.Supp. at 572–74.

*Corp.* ("*163 Pleasant St. II*"), 987 F.2d 39 (1st Cir.1993) (citations omitted).

■ The level of contacts needed to establish general jurisdiction is considerably higher than that needed for specific jurisdiction. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996). In *Perkins v. Benguet Consolidated Mining Co.*, the only case where the Supreme Court has upheld general jurisdiction, the general manager and president of the defendant Filliping corporation had moved his office to Ohio during the Japanese occupation of the Philippines in World War II. 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952). He maintained the company records in Ohio, held directors' meetings there, and generally carried on in Ohio "a continuous and systematic supervision of the necessarily limited wartime activities of the company." *Id.* at 448, 72 S.Ct. at 419.

General jurisdiction has also been found in a few lower court cases where the defendant's contacts with the forum state were similarly "continuous and systematic." In *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* the Third Circuit held that Pennsylvania could exercise general jurisdiction over a California savings and loan association where some of the association's depositors were Pennsylvania residents, three Pennsylvania banks serviced $10.2 million of the association's loans, and the association maintained a "controlled disbursement account" with a Pennsylvania bank under which the association would wire funds every business day to cover the total amount of checks cleared through the bank that day. 819 F.2d 434 (3d Cir.1987). Though these Pennsylvania contacts made up only a small proportion of the association's total activities, they were central to the association's activities and thus constituted "substantial, ongoing, and systematic activity in Pennsylvania." *Id.* at 438. *See also Metropolitan Life Ins. Co.*, 84 F.3d at 572 (minimum contacts existed where the defendant had $4 million in in-state sales in a six-year period, had extensive relationship with dealers and "authorized" builders selling its products, sent employees to visit these dealers and builders, advertised and provided support services to state residents using its products, and deliberately targeted state architectural firms as sales prospects, but general jurisdiction was not found for fairness reasons).

■ No comparable level of in-state activity exists here for either defendant. Considering those contacts which can be attributed directly to the named defendants,[6] there is not enough to conclude that either of them "carried on 'continuous and systematic' activities within the forum sufficient to justify requiring it to answer there to a claim unrelated to its in-forum presence." *Sandstrom,* 904 F.2d at 88 (citing *Perkins,* 342 U.S. at 445, 72 S.Ct. at 418). Rather, the activities are those typical of foreign corporations conducting interstate and international commerce. Taken singly, none of the alleged contacts makes the defendants subject to general jurisdiction in Massachusetts, and taken together, the alleged contacts are considerably short of the general business presence upheld in *Perkins.*

Indeed, the First Circuit has rejected an appeal for general jurisdiction on a more substantial showing of forum contacts. *Glater v. Eli Lilly & Co.*, 744 F.2d 213 (1st Cir.1984) (declining to exercise general jurisdiction over a defendant manufacturer which advertised in trade journals circulated within

---

**6.** Many of the alleged contacts involve separately incorporated Daewoo entities and thus cannot be attributed to the defendants. Specifically, it appears that the alleged joint ventures with Data General Corporation and Powercell Corporation actually involve Daewoo Telecom Co. Ltd. and Daewoo Motor Company Ltd., respectively. Pl.'s Combined Mem. Oppos. Defs.' Mots. to Dismiss, App., Vol. I, Thompson Aff., Exs. 6, 12. Moreover, it is Daewoo Telecom Co. Ltd. which owns an interest in Leading Edge Products Inc., *Id.,* at Ex. 10, and Daewoo U.K. Ltd. which owns the property in Cambridge. *Id.,* App., Vol. II, at Tab 2. Finally, of the thirty-seven "Daewoo" UCC filings with the Massachusetts Secretary of State's office, only one was filed by a named defendant. *Id.,* at Tab 1. These contacts are not to be automatically attributed to the defendants because they are affiliates in the same corporate family. *See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.* ("*163 Pleasant St. I* "), 960 F.2d 1080, 1091 (1st Cir.1992) (holding that in Massachusetts, the doctrine of corporate disregard is rarely applied).

the state, hired eight sales representatives to provide information about its products to state hospitals and doctors, and, most relevant to this case, sold products to individual wholesale distributors who then sold them in-state). *See also Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987) (general jurisdiction did not exist even though the defendant manufacturer maintained an in-state distribution network, advertised its products in the forum state, and conducted nearly $250 million of business there because the defendant did not control its dealers, hired no in-state agents, was not qualified to do business in-state, and had no listings, warehouses, manufacturing facilities, or bank accounts within the state).

### B. Discovery

 In this case, discovery, even as to jurisdictional issues, was stayed pending the disposition of the present motion. The Court takes note of the general principle that a diligent plaintiff who is a "total stranger" to a defendant corporation and faces a motion to dismiss for lack of personal jurisdiction normally should be allowed to conduct discovery to bolster its claim of jurisdiction. *Surpitski v. Hughes–Keenan Corp.,* 362 F.2d 254, 255 (1st Cir.1966).

 However, in this case discovery would not affect the resolution of the dispositive issues. As described above, jurisdiction may not be upheld under the long-arm statute because the present cause of action plainly arose out of business dealings occurring in Korea and not out of any contact either defendant has or had with Massachusetts. Jurisdiction may not be upheld under the alternate theory, Mass. Gen. L. ch. 223, § 38, because the plaintiff did not in fact resort to that statute's prescribed procedure and because, even if it had, the assertion of "general jurisdiction" over the defendants would not comport with the requirements of due process. Discovery might have been useful to

the plaintiff if a closer assessment of the nature and extent of the defendants' contacts with Massachusetts were necessary. But because the factual predicate for jurisdiction that is proffered by the plaintiff falls so far short of the minimum contacts necessary under the Due Process Clause to sustain general jurisdiction, the benefit to the plaintiff of an opportunity for discovery is not realistically discernible.

### C. Forum Non Conveniens

 Even if personal jurisdiction could be sustained, the Court would nonetheless dismiss the case on *forum non conveniens* grounds. This doctrine permits courts to dismiss a suit where an alternative forum is available in another nation which is fair to the parties and substantially more convenient for them or the courts. *Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1349 (1st Cir.1992), *cert. denied,* 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 255 (1993); *Howe v. Goldcorp Invs., Ltd.,* 946 F.2d 944, 947 (1st Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 418 (1992).

 Because there is a strong presumption in favor of the plaintiff's choice of forum, the defendants have the burden of proving that an adequate alternative forum (in this case, Korea) is available *and* that serious unfairness to the parties in the absence of a transfer to Korea is likely. *Mercier,* 981 F.2d at 1349. An alternative forum is considered "available" where, as here, the defendants are amenable to process in that forum. *Id.* Korea, as the suggested alternative forum, is also "adequate" to the extent that its courts recognize actions based on breach of contract and negligence.[7]

 In determining whether Korea is a fairer and more convenient forum, the Court considers both "private interest" and "public interest" factors. The private interest factors include relative ease of access to sources

---

7. LTX claims that Korea is an inadequate forum, in part, because its courts have more limited discovery procedures than United States courts. The caselaw is clear, however, that different or less generous discovery rights do not make a foreign court system inadequate. *Mercier,* 981 F.2d at 1352–53 (citing *Lockman Found. v. Evan-*

*gelical Alliance Mission,* 930 F.2d 764, 768 (9th Cir.1991)); *Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1484 (9th Cir.), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988); *In re Union Carbide Gas Plant Disaster,* 809 F.2d 195, 205 (2d Cir.), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987).

of proof, availability of compulsory process, the cost of securing attendance of witnesses, and " 'all other practical problems that make trial of the case easy, expeditious and inexpensive.' " *Mercier,* 981 F.2d at 1354 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

The public interest factors to be considered are the "administrative difficulties resulting from court congestion in the plaintiff's chosen forum; the local interest in having localized controversies decided at home; the interest in having the trial of a case conducted in a forum that is at home with the governing law; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of imposing jury duty on citizens in an unrelated forum." *Mercier,* 981 F.2d at 1354 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981) (internal quotations omitted)).

These private and public interest factors do not argue strongly for Massachusetts as a forum. Many of the witnesses, party and non-party, live in Korea. The contract was negotiated, at least in part, by LTX's Asian and Korean subsidiaries, so that it is likely that some of the plaintiff's own witnesses would also come from Korea.

There is no strong public interest calling for the adjudication of this controversy in Massachusetts. The case essentially involves a claim by a Korean subsidiary with a Massachusetts parent against two other Korean companies for the breach of a contract negotiated in Korea and Singapore for goods to be delivered in Singapore. At this point, it appears likely that Korean law will govern the contract issues. Of the three potential forums, Korea seems the most appropriate, certainly more so than Massachusetts. To the extent the parties' choice is to be regarded, the matter should be arbitrated in Paris. Litigation here seems to be the least appropriate forum.

Accordingly, if the Court is in error in concluding that personal jurisdiction is lacking, the Court alternatively grants the defendants' motion to dismiss for *forum non conveniens.*

For these reasons, the defendants' motion is granted, and the action is hereby dismissed.

SO ORDERED.