MILDRED N. CAMPBELL, individually and as executrix, *vs.*
FRONTIER FISHING AND HUNTING, LTD.

Worcester. April 22, 1980. — June 19, 1980.

Present: GRANT, BROWN, & NOLAN, JJ.

*Jurisdiction,* Foreign corporation.

Massachusetts had personal jurisdiction under G. L. c. 223, § 38, over a
    Canadian corporation where the corporation regularly and systemati-
    cally solicited business in Massachusetts and, through its solicitation,
    acquired customers who were Massachusetts residents, and where
    valid service was made on a Massachusetts agent of the corporation.
    [55-56]

CIVIL ACTION commenced in the Superior Court on
August 11, 1976.

The case was heard by *Doerfer,* J., on a motion to
dismiss.

*Roger J. Brunelle* for the plaintiff.
*Paul P. O'Connor* for the defendant.

NOLAN, J. The plaintiff appeals from a judgment of the
Superior Court in favor of the defendant on the ground of
lack of personal jurisdiction. Mass.R.Civ.P. 12(b)(2), 365
Mass. 755 (1974). We reverse.

The judge's memorandum of decision is generous in fur-
nishing us the operative facts which are beyond dispute.
The plaintiff is the executrix of the will of Charles A. Camp-
bell (the decedent), her late husband, who died on or about
August 14, 1975, as a result of the alleged negligence of the
defendant while he was on a fishing tour in Canada. The
defendant Frontier Fishing and Hunting, Ltd. (Frontier), is
a Canadian corporation engaged in the business of sponsor-
ing fishing tours in Canada. One Norman B. Keddy, for-
merly a codefendant, was a Massachusetts resident and a di-

rector of Frontier at all times material to the case. Service was made on Frontier by serving Keddy in hand in Massachusetts.

Keddy was the president, treasurer and majority stockholder of Kay Vee Realty Company, Inc., whose telephone number was advertised on a brochure published by Frontier. Persons who wished to make arrangements for fishing trips were encouraged to call this telephone number. Keddy was acting as agent of Frontier in soliciting business for Frontier. In 1975, eight to ten people contacted Keddy or his employees to discuss Frontier's services. Keddy distributed Frontier's brochures to a number of sporting goods stores in Massachusetts. He gave copies of the brochure to a news magazine at the request of Frontier's manager in Canada.

Keddy displayed Frontier's brochures at a boat show in Boston at which a marina in Webster, Massachusetts, principally owned by Keddy and his family, maintained a booth. The marina also displayed Frontier's brochures at the request of Frontier's president.

The decedent, a Massachusetts resident, arranged with one Harry Ayotte in Massachusetts to go on a fishing trip sponsored by Frontier. Ayotte first learned of Frontier's activities at the Boston boat show mentioned earlier. Ayotte collected a deposit of $200 from the decedent and from four other people in Massachusetts. He forwarded that money to Frontier's office in Canada through the Keddys' marina.

In July, 1975, nine out of twenty persons who stayed at Frontier's camp in Canada were from Massachusetts. August, 1975, found six of the twenty-one persons at the camp from Massachusetts, while four out of sixteen campers in September were Massachusetts residents. In 1975, thirty-three percent of Frontier's business came from residents of Massachusetts.

The judge found that Keddy was an agent of Frontier in charge of its business in Massachusetts at the time of service on him. However, he made the validity of service under G. L. c. 223, § 38, dependant upon the question of jurisdic-

tion over Frontier under G. L. c. 223A, § 3, the so called long arm statute, which he ruled to be inapplicable. Section 38 is independently viable and has not been supplanted by G. L. c. 223A. *Walsh* v. *National Seating Co.*, 411 F. Supp. 564, 572 (D. Mass. 1976).

Section 38 permits service of process on a foreign corporation which "is engaged in or soliciting business in the commonwealth, permanently or temporarily." Service is accomplished in the same manner as is service on domestic corporations pursuant to G. L. c. 223, § 37. Under § 37, personal jurisdiction over a domestic corporation may be acquired, inter alia, by service on the "agent . . . in charge of its business." The judge found Keddy to be such an agent, and there was a substantial basis for such finding. Our analysis is founded on the two-step inquiry set forth in *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979), which is instructive, though it was decided under G. L. c. 223A, § 3: "(1) [I]s the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?" Sections 37 and 38 are the affirmative responses to the first inquiry. Since the primordial case of *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945), State courts have been permitted to exercise personal jurisdiction over foreign corporations consistent with due process if the corporations "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken* v. *Meyer*, 311 U.S. 457, 463." *Id.* at 316.

As to the second question, Frontier's activities in Massachusetts were sufficient to meet the test. Frontier actively marketed its fishing tours through Keddy and Ayotte. The decedent and his five travelling companions were Massachusetts residents and made their cash deposits for the trip in Massachusetts. The following language of *Jet Mfg. Co.* v. *Sanford Ink Co.*, 330 Mass. 173, 176 (1953), used in upholding jurisdiction acquired under § 38, can be applied

to this case: "There was a regular and systematic effort to acquire business by solicitation . . . which led to the acquisition of a substantial number of customers."

Massachusetts "has a manifest interest in providing effective means of redress for its residents." *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 223 (1957). The fact that the cause of action arose in Canada does not defeat Massachusetts' claim to personal jurisdiction over Frontier under § 38, because this statute "does not restrict service on resident agents of foreign corporations to causes of action arising within the Commonwealth." *Trojan Engr. Corp.* v. *Green Mountain Power Corp.*, 293 Mass. 377, 382 (1936).

In summary, it was error to allow the motion to dismiss for want of personal jurisdiction. Personal jurisdiction over Frontier was acquired because of valid service on Keddy, an agent of Frontier, and Frontier's activities in Massachusetts. Accordingly, the judgment in favor of Frontier is reversed.

*So ordered.*