**Randall S. HOWSE, Plaintiff, Appellant,**

v.

**ZIMMER MANUFACTURING CO., INC., Defendant, Appellee.**

**No. 84–1611.**

United States Court of Appeals, First Circuit.

Argued Dec. 7, 1984.

Decided March 26, 1985.

Mark L. Donahue, Braintree, Mass., with whom Richard E. Blumsack, Somerville, Mass., was on brief, for plaintiff, appellant.

Robert S. Kutner, Boston, Mass., with whom Casner, Edwards & Roseman, Boston, Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from a decision of the United States District Court for the District of Massachusetts granting a motion of defendant Zimmer Manufacturing Company to dismiss for lack of personal jurisdiction under Mass.Gen.Laws ch. 223, § 38. 586 F.Supp. 915 (1984). For the reasons stated, we vacate and remand.

## I. FACTS

In January 1981, plaintiff Randall S. Howse was involved in a motorcycle accident in Rota, Spain, and suffered a broken hip. A resident of Massachusetts both before and after his Navy service, Howse was at this time in the United States Navy. Howse underwent surgery to repair his hip at the United States Naval Hospital in Rota, during which a Jewett Nail and Plate allegedly manufactured by defendant Zimmer Manufacturing Company ("Zimmer") was inserted into Howse's hip. During later treatment at the United States Naval

Hospital in Newport, Rhode Island, doctors discovered that the Jewett Nail and Plate was malpositioned and that two of the screws intended to hold it in place were missing. Plaintiff claims that, as a result, the fracture had set improperly, causing a malunion of the bone and a difference in the length of his legs.

Zimmer is a Delaware corporation with its principal place of business and home office in Indiana. Zimmer manufactures surgical implants, including the Jewett Nail and Plate. Zimmer is not registered to do business in Massachusetts and has not appointed a registered agent in Massachusetts. Zimmer does not manufacture or assemble any products in Massachusetts, nor does it have an office, telephone, telephone listing, bank account, or postal address in Massachusetts. Zimmer has no employees who maintain a residence or place of business in Massachusetts. Zimmer has not entered into a written distributorship agreement or franchise agreement with any person to sell its products in Massachusetts, and has no agents or employees who regularly solicit customers in Massachusetts.

Zimmer distributes its products in Massachusetts through Docherty Associates, Inc., a Massachusetts corporation, located in Concord, Massachusetts. At the direction of Jack Docherty, its majority shareholder and president, Docherty Associates does business as Zimmer Docherty Associates. Docherty Associates is Zimmer's exclusive sales representative in Massachusetts; its regular clientele includes all of the hospitals in Massachusetts. In addition to four employees, Docherty has six salesmen who sell its products on a commission basis. In 1983, Docherty Associates sold nearly $4 million worth of Zimmer's goods in Massachusetts, and typically carried an inventory of Zimmer goods with a value of $380,000.[1] Zimmer has no control over Docherty Associates' day-to-day operations. Docherty As-

sociates acts as an independent contractor, and has no written franchise agreement with Zimmer. Neither Docherty Associates nor any employee of it is paid a salary by Zimmer. Docherty Associates files no annual or yearly sales reports with Zimmer, although Jack Docherty testified that "[t]hey know what I'm doing." Docherty pays for its own promotional materials and advertisements, including advertisements under the name of Zimmer Docherty Associates. Zimmer sends Docherty regular announcements of new products, which Docherty then makes available to its users—mostly surgeons—and salesmen. Zimmer conducts optional training sessions for salesmen at its headquarters in Indiana.

Although no administrative individual from Zimmer has visited Docherty Associates, Zimmer is "always" sending its product and sales representatives to Docherty Associates in Massachusetts to aid in the development of new products and specific need products; Docherty Associates acts as a liaison between Zimmer's employees and the various surgeons who work in Massachusetts, and voluntarily provides Zimmer with information about new developments coming from the Massachusetts medical community as well as about Docherty's own views and objectives.

Zimmer does business with Docherty on a commission basis. Customers wishing to purchase Zimmer's goods place their orders with Docherty, who either fills them directly from his inventory or relays them to Zimmer's home office, in which case Zimmer fills them directly. Payment for the product is always made directly to Zimmer in Indiana.

## II.  PERSONAL JURISDICTION

The issue in this appeal is whether the district court erred in holding that it had no personal jurisdiction over Zimmer under Mass.Gen.Laws ch. 223, § 38.

Section 38 of Mass.Gen.Laws ch. 223 provides as follows:

---

**1.** Jack Docherty testified that there were "thousands" of different pieces of equipment, listed in three catalogues, for which it represented Zim-

mer in Massachusetts. Zimmer is the largest company in the field of surgical implants.

## § 38. Foreign corporations

In an action against a foreign corporation, except an insurance company, which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section relative to service on domestic corporations in general. . . .

Howse contended before the district court and contends on appeal that Zimmer is "engaged in or soliciting business in the commonwealth" of Massachusetts.

### A. *Soliciting Business*

The district court held that Massachusetts courts had defined solicitation for the purposes of chapter 223, section 38, too narrowly to permit it to exercise jurisdiction over Zimmer on that ground. In so holding, the district court relied on our analysis of Massachusetts precedent in *Caso v. Lafayette Radio Electronics Corp.*, 370 F.2d 707 (1st Cir.1966), in which we concluded,

> From these cases we derive two propositions about the Supreme Judicial Court's treatment of jurisdiction over foreign corporations: (a) despite the language of Mass.G.L. c. 223, § 38, and despite the court's intimations to the contrary, it has never extended jurisdiction over a corporation whose activities in the state amounted to no more than the constitutionally permissible "minimum contact"—it has regularly found more than "mere solicitation"; (b) even when it has found solicitation plus some other activity, it has not extended jurisdiction when the cause of action did not arise out of the activities in Massachusetts. On the other hand, where the corporation's activities more closely approximated the regular conduct of a domestic corporation—that is to say, where the defendant was clearly "doing business" in Massachusetts—the court has allowed jurisdiction for a transitory cause of action.

We are satisfied that, generally speaking, the Massachusetts courts would assert jurisdiction over a foreign corporation served under section 38: (a) whenever the corporation's activities affect the commerce of Massachusetts substantially so that the state has an interest in regulating the general conduct of those activities ("doing business"), or (b) whenever the corporation's activities in Massachusetts have so affected the particular transaction at issue that it is appropriate to hear the claim in a Massachusetts court. We are not satisfied that jurisdiction would obtain in the absence of both these conditions.

*Id.* at 711–12 (citations omitted).

Howse contends that Massachusetts courts no longer construe the "soliciting business" language so conservatively—specifically, that they permit a corporation that merely solicits business in Massachusetts to be sued in Massachusetts for a tort not arising out of that corporation's Massachusetts activities. We disagree.

Howse purports to rely on two cases, *Walsh v. National Seating Co.*, 411 F.Supp. 564 (D.Mass.1976), and *Campbell v. Frontier Fishing & Hunting, Ltd.*, 10 Mass.App. 53, 405 N.E.2d 989 (1980), in questioning the continued vitality of *Caso*. Neither provides support for such a conclusion. *Walsh* is not a Massachusetts state case, and the district court there expressly declined to reach the issue of whether mere solicitation sufficed to support the exercise of personal jurisdiction over the defendant Motor Coach Industries, Inc. The court in *Walsh* noted in passing that the fear underlying the Massachusetts cases on which *Caso* rests—that the exercise of jurisdiction over corporations that merely solicit business in Massachusetts would violate the due process clause—proved to be unfounded after *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. This observation, however, is hardly a new one. *Caso* itself discusses several Massachusetts cases decided after *International Shoe*, such as *Wyshak v. Anaconda Cop-*

*per Mining Co.*, 328 Mass. 219, 103 N.E.2d 230 (1952), and *Jet Manufacturing Co. v. Sanford Ink Co.*, 330 Mass. 173, 112 N.E.2d 252 (1953), which reflect doubts concerning the constitutional basis of the original decision restricting section 38 jurisdiction, *Thurman v. Chicago, Minneapolis & St. Paul Railway*, 254 Mass. 569, 151 N.E. 63 (1926). None of these cases, however, upheld the exercise of jurisdiction over a corporation that merely solicited business in Massachusetts. *Walsh* simply repeats the doubts already expressed in *Caso* about the present interpretation the Massachusetts courts would give section 38 without adducing any new precedent or argument to indicate that the *Caso* court's reading of Massachusetts precedent was unsound.

*Campbell*, likewise, does not support Howse's contention. In *Campbell*, the defendant was an organizer of fishing expeditions; plaintiff's decedent was injured as a result of the alleged negligence of the defendant during one such trip. One of the defendant's directors resided in Massachusetts and solicited business for the defendant in Massachusetts by distributing and displaying defendant's brochures, by allowing defendant to use the telephone number of a company of which he was the majority owner, and by receiving calls for defendant at that number. Plaintiff's decedent indirectly learned of the trip on which he was injured through the efforts at solicitation by defendant's director.

Howse interprets *Campbell* to have implicitly rejected *Caso* by construing section 38 as an exercise of jurisdiction to the limits allowed by the due process clause; however, we do not so read it. The court in *Campbell* adopted the two-pronged approach to jurisdiction that *Good Hope Industries v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76 (1979), had already established for analyzing jurisdiction under Mass.Gen.Laws c. 223A, § 3, the Massachusetts long arm statute, namely, whether jurisdiction was (1) authorized by statute, and (2) consistent with due process. While *Campbell* is somewhat difficult to interpret, we read the court's opinion as con-

cluding that each prong of the test had been met, not that section 38 should be construed to function as an assertion of jurisdiction to the limits allowed by the Constitution, as Massachusetts courts have held for chapter 223A, section 3. *See "Automatic" Sprinkler Corp. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423 (1972).

■ In brief, we have found no Massachusetts case decided in the 19 years since *Caso* to indicate that mere solicitation would be a sufficient basis for section 38 jurisdiction. To be sure, much water has otherwise gone over the dam since then, but in diversity cases the federal courts do not undertake to restructure state law.

### B. *Doing Business*

We said in *Caso* that where "a foreign corporation's activities more closely approximated the regular conduct of a domestic corporation—that is to say where the defendant was clearly 'doing business' in Massachusetts—the court has allowed jurisdiction for a transitory cause of action." 370 F.2d at 707. We further described "doing business" as activities affecting the commerce of Massachusetts so substantially "that the state has an interest in regulating the general conduct of those activities." The question thus arises whether Zimmer's activities in Massachusetts were extensive and systematic enough to amount to doing business in Massachusetts. Several cases are instructive in this regard, although none controlling.

On the one hand, we find cases like *Woodlawn Realty Corp. v. Smith-Scott Co.*, 226 F.Supp. 704 (D.Mass.1964), in which defendant was a Connecticut corporation marketing pipe in Massachusetts through an independent exclusive distributor. Defendant had no employees in Massachusetts and never sent a representative to Massachusetts, although it was found to solicit business, own property, and have a telephone listing in Massachusetts. The district court held that the defendant was

not engaged in doing business in Massachusetts within the meaning of section 38.

A pattern of more substantial contacts was found insufficient to confer jurisdiction in *Farkas v. Texas Instruments, Inc.,* 50 F.R.D. 484 (D.Mass.1969), *aff'd in relevant part,* 429 F.2d 849 (1st Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971). In *Farkas,* the defendant was a Texas corporation ·that maintained an office in Massachusetts solely for the purpose of soliciting business. All orders were accepted at defendant's headquarters in Texas. Defendant had a Massachusetts subsidiary that distributed its products in Massachusetts, but the parent exercised no control over its management. The court held that because the parent did not control its subsidiary's day-to-day operations, the subsidiary was not its agent in Massachusetts. Therefore, defendant's activity in Massachusetts was confined to solicitation, which alone did not suffice to support the exercise of jurisdiction. Similarly, this court in *Caso* found that a New York corporation with a Massachusetts retail subsidiary was not subject to Massachusetts jurisdiction even though its subsidiary distributed mail order catalogues and sometimes repaired its goods.

On the other hand, in construing the term "doing business" in Mass.Gen.Laws ch. 246, § 1, governing jurisdiction over trusts, whose scope the court equated with that of section 38, the Massachusetts Supreme Judicial Court held in *Wyshak,* 103 N.E.2d at 232, that the defendant's direct maintenance of a telephone listing and a local office and substantial staff for promoting sales and investigating complaints amounted to doing business. The court stated that promotional work and the investigation of complaints went beyond "mere solicitation." 103 N.E.2d at 232.

The district court in *Walsh* went somewhat further. It found that a North Dakota corporation was doing business in Massachusetts where its sales there exceeded $1 million per year and its employees came regularly to Massachusetts to service the buses which it manufactured. 411 F.Supp. at 575. Additionally, defendant had a resident sales manager in Massachusetts (although he was employed not by defendant but by its national sales representative) and maintained a local telephone listing. *Id.* at 572.

In the present case, Zimmer maintains no telephone listing or office in Massachusetts. On the other hand, its exclusive Massachusetts representative (Docherty Associates, Inc., d/b/a Zimmer Docherty Associates) uses the Zimmer name as part of its own, and Zimmer's sales in Massachusetts approached $4 million in 1983, exceeding that of Motor Coach Industries, Inc. in *Walsh.* Docherty Associates also maintains in Massachusetts a large stock of Zimmer parts—$380,000, or more, at any one time. Additionally, and to us most significantly, Zimmer is "always" sending representatives to Massachusetts to confer with surgeons concerning the development of new products and specific need products.[2] We think this pattern of extensive in-state activities removes Zimmer from the category of defendant encountered in *Caso* and places it in the class of defendant encountered in *Wyshak* and *Walsh.* While the case is close, the fact that Zimmer representatives are constantly in and out of Massachusetts in order to deal directly

---

2. Jack Docherty testified in his deposition as follows:

Q. Have you had a product representative or sales representative from Zimmer come to your place of business?
A. Of course. Right now, we're working on a brand new total hip with Dr. Bill Harris, and I had four of them in on Tuesday and Wednesday. There always people flown in.
Q. Always people from Indiana being flown to Massachusetts?

A. Yes, more. You see, Boston is a center for orthopedics, not only for this country, sometimes for the world. I sometimes act as a liaison between the surgeons or Boston and Zimmer itself, so I always have people coming in here to have a dialogue with different surgeons. ·
Q. As far as developing new products and developing specific need products?
A. That's right.

with customers, coupled with the sizeable sales volume and other factors, removes this from the "mere solicitation" and "solicitation plus" category in the *Caso* analysis. Zimmer's high volume of business in Massachusetts, when combined with its employees' frequent contacts in Massachusetts with Massachusetts surgeons to develop not only new but specific needs products, comprise a systematic pattern of in-state activity "more closely approximat[ing] the regular conduct of a domestic corporation." *Caso*, 370 F.2d at 712.

*Accordingly, finding jurisdiction, we vacate the judgment of the district court and remand for further proceedings.*