PHARMACHEMIE B.V., Plaintiff,

v.

PHARMACIA S.p.A. and Pharmacia
Inc., Defendants.

Civil Action No. 95–40085–NMG.

United States District Court,
D. Massachusetts.

July 25, 1996.

Francis C. Lynch, Richard B. Smith, Anne Robbins, Palmer & Dodge, Boston, MA, for plaintiff Pharmachemie B.V.

Grantland G. Drutchas, Daniel A. Boehnen, Allegretti & Witcoff, Chicago, IL, John P. Iwanicki, Banner & Allegretti, Ltd., Boston, MA, Kyle K. Kappes, Banner & Allegretti, Ltd., Chicago, IL, Palmer & Dodge, Boston, MA, for defendant Pharmacia S.p.A.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The above-entitled patent infringement case was filed originally on May 3, 1995. On June 22, 1995, plaintiff Pharmachemie B.V. ("Pharmachemie"), incorporated in the Netherlands and a manufacturer of generic pharmaceutical products, filed an Amended Complaint against defendants, Pharmacia S.p.A. ("S.p.A.") and Pharmacia Inc. ("Inc."). Pharmachemie seeks a declaration that its PCH Doxorubicin Product does not infringe on certain patents held by defendants or, alternatively, that those patents are invalid.[1]

This Memorandum and Order addresses ten of the eleven motions pending before this Court.[2] Of those ten motions, only two—the defendants' motions to dismiss—need to be addressed at length.

### I. S.p.A.'s Motion to Dismiss

On July 10, 1995, defendant S.p.A. filed a motion to dismiss for lack of personal and/or subject matter jurisdiction. Pharmachemie opposes the motion.

---

**1.** The product at issue is Pharmachemie's "Doxorubicin Ready to Use for Injection," which is used in the treatment of cancerous tumors. In broad terms, the product is the finished dosage form of a drug that is used in cancer chemotherapy. The active drug substance, doxorubicin, is not patented. Instead, the patents-in-suit apply to a product which makes available individual, ready-to-use vials of doxorubicin which do not need to be reconstituted by medical professionals prior to administration to patients.

**2.** Pharmachemie's Motion for Summary Judgment [Docket # 65] is not addressed.

## A. *Relevant Facts*

Most of the facts relevant to deciding S.p.A.'s motion to dismiss are found in the affidavit of Maurizio Premoli, an Italian citizen who is the company's Vice President of Licensing. S.p.A. is an Italian corporation that manufactures pharmaceutical products, and all of its production facilities are located in that country. Premoli Aff. at ¶ 2. S.p.A. is the successor in interest to another Italian company, Farmitalia Carlo Erba s.r.l. ("Farmitalia"), which ceased to exist as of December 31, 1994. S.p.A. is not licensed to do business in the United States or Massachusetts, and has no subsidiary, office or facility in the United States. *Id.* at ¶¶ 2–3. S.p.A. has no salespersons or employees stationed in the United States, owns and/or leases no real estate in the United States, and has no bank account, telephone number, or mailing address in this country. *Id.* at ¶ 3. The company neither advertises, sells products nor solicits business in Massachusetts. *Id.* at ¶ 4.

Pharmacia S.p.A. is a separate and distinct entity from co-defendant Pharmacia Inc., a Minnesota corporation. The companies have no common business facilities, although both entities are owned by the same parent company. S.p.A. has no ownership interest in, or control over Inc. Premoli Aff. at ¶ 7.

When Pharmachemie filed its initial Complaint, S.p.A. was the nominal titleholder of U.S. Patent Nos. 4,946,831, 5,124,317, and 5,124,318 ("the patents-in-suit"), covering inventions made by Farmitalia in Italy during the 1980s. All rights under the patents-in-suit were exclusively licensed to Inc., however, including the right to control litigation pertaining to the patents. Premoli Aff. at ¶ 8. On June 16, 1995, S.p.A. formally assigned the patents to Inc., meaning that since that date the Italian corporation has not held even nominal title to the patents. Premoli Aff. at ¶ 9, Ex. B.

S.p.A.'s only current connection to the patents-in-suit is that it produces doxorubicin, an unpatented bulk raw material that is later sold and shipped to Inc. in the United States. Inc. then uses the raw material to produce the patented product in its New Mexico facility. Premoli Aff. at ¶ 10.

Premoli is "aware" of certain conversations that took place in early 1995 in Europe between S.p.A. and Pharmachemie (two European companies) with respect to the latter's sale of allegedly-infringing products in Europe and Israel. Premoli Aff. at ¶ 11. During those conversations, "Pharmachemie said that it had studied the U.S. patents, had concluded that it did not infringe those patents, and was planning to enter the market in the United States." *Id.* During those conversations "no one made any reference to litigation involving Astra USA, Inc. or Massachusetts" and S.p.A. "made no telephone calls and sent no letters to anyone in Massachusetts regarding Pharmachemie's [alleged] infringement of the patents." *Id.*

## B. *Personal Jurisdiction*

■ S.p.A. contends that this Court lacks personal jurisdiction over the Italian corporation. *See* Fed.R.Civ.P. 12(b)(2). When a defendant challenges personal jurisdiction, plaintiff bears the burden of demonstrating the existence of such jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir.1995). In patent cases, issues of personal jurisdiction are controlled by the law of the United States Court of Appeals for the Federal Circuit. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir.), *cert. dismissed*, —— U.S. ——, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994).

The sole basis advanced by Pharmachemie for asserting personal jurisdiction over S.p.A. in this Court is Fed.R.Civ.P. 4(k)(2). That Rule, which became effective on December 1, 1993, provides that:

> [i]f the exercise of jurisdiction is consistent with the Constitution and the laws of the United States, serving a summons ... is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Plaintiff asserts that this Court's exercise of personal jurisdiction over S.p.A. is authorized by Rule 4(k)(2) because: 1) S.p.A. is

not subject to the jurisdiction of courts of general jurisdiction of any state, but 2) the company's aggregate contacts with the United States satisfy due process concerns.[3] S.p.A. concedes that it has sufficient contacts with the United States as a whole to satisfy due process, *see* Reply Brief at 2. This Court thus turns its attention to whether S.p.A. was subject to the jurisdiction of the courts of general jurisdiction of any state.

In its Memorandum in support of its Motion to Dismiss, S.p.A. argued that it is not subject to the jurisdiction of Massachusetts courts of general jurisdiction. Pharmachemie "[does] not contest that admission for purposes of its opposition to this motion ..." and further seeks to demonstrate that S.p.A. is not subject to the courts of general jurisdiction of Ohio or New Mexico—the only states other than Massachusetts with which S.p.A. identifies any contacts.

█ The only Ohio statute which authorizes the service of process upon non-resident defendants is that State's long-arm Statute, Ohio Rev.Code § 2307.382. In order for that statute to apply, S.p.A. must have engaged in one of the activities enumerated by the statute *and* plaintiff's cause of action must "arise from" that enumerated activity. Ohio Rev.Code § 2307.382(A), (C).[4] A cause of action "arises from" S.p.A.'s Ohio activities only if those contacts are a "competent producing cause" of the cause of action. *See Coleman*, 712 F.Supp. at 121.

█ In his affidavit, Premoli points to two contacts between S.p.A. and Ohio: 1) the corporation's sale of bulk doxorubicin raw material to Pharmacia Inc., and 2) S.p.A.'s assignment of the patents-in-suit to Inc. Pharmachemie argues, and this Court agrees, that S.p.A. is not subject to jurisdiction in Ohio because plaintiff's cause of action does not "arise from" those contacts. Although S.p.A.'s Ohio contacts are related to this litigation, plaintiff's declaratory judgment claim cannot be said to directly arise

out of the assignment of the patents or the patent license agreement. In short, because S.p.A.'s contacts with Ohio are not a "competent producing cause" of the litigation, S.p.A. is not subject to jurisdiction in Ohio's courts of general jurisdiction.

█ Similarly, S.p.A. is not amenable to jurisdiction in New Mexico's courts of general jurisdiction. According to Premoli's affidavit, S.p.A.'s contacts with that State consist of the shipment of doxorubicin raw material to Inc.'s manufacturing facility there. In like manner to its Ohio counterpart, the New Mexico long-arm statute, N.M.Stat.Ann. § 38–1–16, applies only to causes of action which "lie in the wake of" the defendant's New Mexico contacts. *Winward v. Holly Creek Mills, Inc.*, 83 N.M. 469, 493 P.2d 954, 957 (1972) ("[t]here must be a close relationship between jurisdictional activities and the cause of action"). S.p.A.'s contacts with New Mexico are even more attenuated than its contacts with Ohio and, therefore, the Italian company would not be subject to jurisdiction in New Mexico courts.

█ S.p.A. insists that Rule 4(k)(2) is not applicable to the case at bar because the Italian corporation is subject to personal jurisdiction "in other courts of general jurisdiction." Reply Brief at 2. To reach that conclusion, S.p.A. reasons that:

1) the determination as to the existence of personal jurisdiction turns on the facts as they existed at the start of a lawsuit, *see Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 (5th Cir.1981),

2) S.p.A. was the patentee when the instant action was commenced,

3) as a matter of federal patent law, every foreign patent owner is always subject to personal jurisdiction and service of process for lawsuits affecting those patent rights in the United States District

3. Pursuant to Rule 4(k)(2), this Court has personal jurisdiction over S.p.A. if S.p.A.'s aggregate contacts with the United States *as a whole* satisfy due process requirements. *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 87 (S.D.N.Y.1995).

4. The Ohio legislature has not authorized the exercise of personal jurisdiction over non-residents for causes of action that do not arise of a defendant's contacts with that State. *Coleman v. Chen*, 712 F.Supp. 117, 122–23 (S.D.Ohio 1988).

Court for the District of Columbia, *see* 35 U.S.C. § 293,[5] and

4) accordingly, even if a foreign patentee lacks sufficient contacts to establish personal jurisdiction in any particular state's courts, § 293 "supersedes any policy, need, or arguable applicability of Rule 4(k)(2) vis-a-vis foreign patentees."

Reply Brief at 3.

Pharmachemie counters that S.p.A.'s argument that Rule 4(k)(2) is not applicable is fatally flawed because, notwithstanding the provisions of § 293, the United States District Court for the District of Columbia is not a court of general jurisdiction within the meaning of the Rule. The court of general jurisdiction in the District of Columbia is the Superior Court. *See Andrade v. Jackson,* 401 A.2d 990, 992–93 (D.C.1979). The federal court for the District of Columbia is a court of limited jurisdiction and Pharmachemie reasons that Rule 4(k)(2) is applicable whether or not § 293 renders S.p.A. subject to jurisdiction in that forum.

A review of the legislative history of the relatively new provision indicates that paragraph (2) to Rule 4(k) was intended to be a narrow extension of federal jurisdiction to fill a "gap" in the enforcement of federal law:

Under the former rule, a problem was presented when the defendant was a nonresident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation.... In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorpo-

rated into the federal practice by the former rule.

Rule 4, Advisory Committee Notes (1993). The new Rule was adopted following the suggestion, of the Supreme Court in *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) that:

[a] narrowly-tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute, might well serve the ends of ... federal statutes.

*Id.* at 111, 108 S.Ct. at 413.

In the case at bar, this Court is not unsympathetic to S.p.A.'s observation that, because § 293 subjected the Italian corporation to personal jurisdiction, venue and service of process in the United States District Court for the District of Columbia, the policy concerns which served as the impetus for the enactment of Rule 4(k)(2) are not implicated in the case at bar. S.p.A. concludes that, inasmuch as there was no "gap" in the patent law, Rule 4(k)(2) was not intended to apply to cases such as the one at bar.

On the other hand, this Court is not free to disregard the plain language of the Rule, which applies, by its terms, in a federal question case to a foreign defendant not subject to the jurisdiction of the courts "of *general jurisdiction* of any state." (emphasis added). Inasmuch as the United States District Court for the District of Columbia is, like all federal courts, a court of limited jurisdiction, the literal requirements for the exercise of jurisdiction pursuant to Rule 4(k)(2) are satisfied. Accordingly, this Court concludes that it may, consistent with the Rule, exercise personal jurisdiction over S.p.A.

---

**5.** 35 U.S.C. § 293 provides that:

Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the [U.S.] on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given ... or if no person has been designated, the United States District Court for the District of Colum-

bia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

*Id.* The District of Columbia is considered a "state" for present purposes. *See* Fed.R.Civ.P. 81(e).

## C. *Subject Matter Jurisdiction*

S.p.A. also contends that, pursuant to Fed. R.Civ.P. 12(b)(1), this Court lacks subject matter jurisdiction over the declaratory judgment claims. Defendant submits that, contrary to the allegations contained in Pharmachemie's Amended Complaint, S.p.A. does not own any of the patents-in-suit; rather they are owned by Inc. Accordingly, S.p.A. argues that no "actual controversy" exists between plaintiff and S.p.A., as required by the declaratory judgment statute. 28 U.S.C. § 2201.

At the time that Pharmachemie filed its initial Complaint, S.p.A. was the nominal titleholder of the patents-in-suit. Premoli Aff. at ¶ 8. S.p.A. held little more than the bare title to those patents, however, as all rights under each of the patents were exclusively licensed to Inc., including the right to control litigation pertaining to the patents. *Id.* On June 16, 1995, five days before Pharmachemie filed its Amended Complaint, S.p.A. relinquished its bare title to the patents when it formally assigned the patents to Inc. *Id.* at ¶ 9, Ex.B.

When a plaintiff files an Amended Complaint, the date of that second filing becomes the controlling date for determining subject matter jurisdiction. *See Millipore Corp. v. University Patents, Inc.*, 682 F.Supp. 227, 233 (D.Del.1987); *see also Northern Telecom Inc. v. Wang Laboratories, Inc.*, 543 F.Supp. 1026, 1028 (D.Mass. 1982) (no declaratory judgment jurisdiction over one of the defendants at the time the Amended Answer was filed). At the time that Pharmachemie filed its original Complaint, S.p.A. possessed merely nominal title to the patents at issue, but by the time the Amended Complaint was filed, even that last indicia of ownership had been removed. Inasmuch as no actual controversy between S.p.A. and Pharmachemie could exist after the transfer of nominal title of the patents to Inc., this Court concludes that it lacks declaratory judgment subject matter jurisdiction over S.p.A.

Pharmachemie maintains that S.p.A.'s assignment of title to the patents within weeks of the initiation of the instant lawsuit demonstrates that the assignment was a sham transaction intended to defeat this Court's jurisdiction and to erect obstacles to discovery.[6] Although this Court agrees it is likely that the timing of the transfer is no mere coincidence, two factors lead this Court to conclude that it, nevertheless, lacks subject matter jurisdiction.

First, this Court discounts as premature Pharmachemie's foreboding that it will encounter great difficulties in obtaining discovery regarding patent validity if S.p.A. is dismissed as a party. Several pleadings refer to the voluminous quantity of documents being exchanged between Inc. and Pharmachemie and, as of this time, there is no indication that Pharmachemie will be unable to obtain discovery of documents relating to the issue of validity. Moreover, Pharmachemie itself acknowledges that other procedural devices, such as the Hague Evidence Convention, are available to obtain documents from S.p.A. Although plaintiff's characterization of such procedures as "time-consuming [and] cumbersome" may be correct, the President and United States Senate have determined that the Convention creates an appropriate mechanism to obtain discovery from foreign non-parties. In short, any perceived or anticipated difficulty with discovery does not provide support for this Court's subject matter jurisdiction where none otherwise exists.

Second, and more importantly, this Court cannot disregard the fact that the assignment of title to the patents divests this Court of declaratory judgment jurisdiction regardless of the motive behind the assignment. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 n. 9, 89 S.Ct. 1487, 1490 n. 9, 23 L.Ed.2d 9 (1969) ("[w]e have no occasion to re-examine the cases in which this Court has held that where the transfer of a claim is absolute, with the transferor retaining no

---

6. In its Opposition Brief, Pharmachemie states that, as of July 21, 1995, no formal assignments of the patents-in-suit had been recorded with the United States Patent and Trademark Office ("PTO"). In its Reply Brief dated September 26, 1995, however, S.p.A. asserts that the assignment has in fact been formally recorded with the PTO and, accordingly, is binding and valid even against subsequent holders in due course. *See* 35 U.S.C. § 261.

interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive."); *Grassi v. Ciba–Geigy, Ltd.,* 894 F.2d 181, 185 (5th Cir.1990).[7] Accordingly, S.p.A.'s motion to dismiss for lack of subject matter jurisdiction [Docket # 9] will be ALLOWED.

## II. *Inc.'s Motion to Dismiss*

On June 10, 1995, Inc. filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). This Court's jurisdictional inquiry with respect to this motion entails two determinations: 1) whether the Massachusetts long-arm statute authorizes the exercise of jurisdiction over Inc., and 2) whether the exercise of jurisdiction over Inc. comports with due process.

### A. *The Massachusetts Long–Arm Statute*

■ M.G.L.c. 223, § 38 provides that jurisdiction may be exercised over a foreign corporation as long as, "with or without [a] usual place of business in [Massachusetts], [the foreign corporation] is engaged in or soliciting business in the commonwealth...." *Id.* The statute permits the exercise of jurisdiction over a foreign corporation that is "doing business" in Massachusetts, *see Howse v. Zimmer Mfg. Co. Inc.,* 757 F.2d 448, 451 (1st Cir.1985), i.e., when the corporation's activities "affect the commerce of Massachusetts so substantially that the state has an interest in regulating the general conduct of those activities." *Id.; Caso v. Lafayette Radio Electronics Corp.,* 370 F.2d 707, 712 (1st Cir.1966).

■ Inc. suggests that:

although [§ 38], on its face, does not require that the plaintiff's cause of action arise out of the corporation's activities in the state, jurisdiction nevertheless requires some relationship between the

cause of action and the defendant's' local activities.

Memorandum in Support of Motion to Dismiss at 10. That suggestion is ill-founded, however, because courts interpreting § 38 have determined that jurisdiction exists under that section if either:

(a) ... the corporation's activities affect the commerce of Massachusetts substantially so that the state has an interest in regulating the general conduct of those activities [ ('doing business') ] *or* (b) whenever the corporation's activities in Massachusetts have so affected the particular transaction at issue that it is appropriate to have the claim in a Massachusetts court.

*Crocker v. Hilton Int'l Barbados, Ltd.,* 976 F.2d 797, 800 (1st Cir.1992) (quoting *Caso,* 370 F.2d at 707); *see also Walsh v. National Seating Co., Inc.,* 411 F.Supp. 564, 575 (D.Mass.1976) (where a defendant is "doing business" in Massachusetts, "the connection between the cause of action and the [in forum] activities need not be present"). Accordingly, so long as the contacts between Inc. and Massachusetts are sufficient to constitute "doing business" within the meaning of § 38, the statute authorizes the exercise of personal jurisdiction over it for all causes of action.

■ This Court has no qualms in concluding that Inc.'s extensive activities in Massachusetts substantially affect the commerce of that Commonwealth such that it is "doing business" there. Indeed, Inc.'s activities in Massachusetts include, *inter alia:*

(i) sales of over $30,000,000 in the State since 1990 and over $5,000,000 during the first nine months of 1995 (Appendix to Opposition to Motion to Dismiss ("App.") at 7–125);

(ii) sales of its products to customers throughout Massachusetts, including hospitals and managed care plans,

---

**7.** It is worthy of note that, even if no transfer of the nominal title to the patents had occurred, S.p.A.—as the mere nominal titleholder—would not be considered an indispensable party to the suit. *See Helene Curtis Industries v. Sales Affiliates,* 199 F.2d 732, 733 (2d Cir.1952) (patent owner not an indispensable party when licensee is an affiliate with the power to control litigation related to the patent); *Micro–Acoustics Corp. v.*

*Bose Corp.,* 493 F.Supp. 356, 359–60 (S.D.N.Y. 1980). Moreover, S.p.A.'s formal assignment of all right, title and interest in the patents to Inc. removes any residual contact by S.p.A. with the dispute. *EMS–American Grilon, Inc. v. DSM Resins, U.S., Inc.,* 15 U.S.P.Q.2d 1472, 1473, 1989 WL 230919 (D.N.J.1989); *Procter & Gamble Co. v. Kimberly–Clark Corp.,* 684 F.Supp. 1403, 1407 (N.D.Tex.1987).

pursuant to long-term contracts (App. at 4, 7–125, 219–221);

(iii) the employment of five sales representatives who live in Massachusetts and work out of their homes and to whom Inc. sends substantial marketing material each year (App. at 131–70, 171–73, 215–18, 326–27);

(iv) an exclusive sales agency agreement with Abbott Laboratories ("Abbott") for the sale of certain products, pursuant to which Abbott had sales of $1.5 million on behalf of Inc. in Massachusetts in 1995 (App. at 3–4, 174–206);

(v) substantial annual payments to Massachusetts hospitals and researchers to perform clinical studies of Inc.'s products (App. at 335–60, 361–72, 388–91, 408–655); and

(vi) registration with the Massachusetts Secretary of State to do business in the Commonwealth and the appointment of an agent for service of process in Massachusetts (App. at 246–47, 277, 282).

This conclusion is bolstered by the First Circuit's decision in *Howse,* where the Court held that personal jurisdiction existed pursuant to § 38, notwithstanding the fact that in Massachusetts the defendant maintained no office, was not registered to do business, had no telephone, bank account or employees, and had not appointed a registered agent for service of process. 757 F.2d at 449. The Court in *Howse* nonetheless found jurisdiction pursuant to the statute in view of the defendant's 1) "sizeable sales volume" ($4 million), 2) oral agreement with an agent in Massachusetts for the distribution of defendant's therein, and 3) significant contacts with surgeons in the Commonwealth in connection with product development. *Id.* at 452–53.

B. *Due Process*

■ In addition to satisfying the State's long-arm statute, a plaintiff must demonstrate that the exercise of personal jurisdiction over an out-of-state defendant comports with due process. *See Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994). For the following reasons, this Court concludes that it may constitutionally exercise general jurisdiction over Inc. in Massachusetts.

■ General jurisdiction exists when the litigation is not directly based upon a defendant's contacts with the forum, but the defendant has nevertheless engaged in "continuous and systematic activity," unrelated to the suit, in the forum state. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 150 (1st Cir.1995). An inquiry as to the existence of general jurisdiction is made in two steps: 1) the Court must examine the defendant's contacts with the forum in order to determine if they exist in sufficient abundance to exercise general jurisdiction and, if so, 2) the Court must consider the reasonableness of the exercise of jurisdiction. *Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990).

■ In view of the abundant contacts between Inc. and Massachusetts enumerated in Part A, *supra,* this Court is decidedly unpersuaded by Inc.'s contention that it has engaged in merely "isolated items of activities in [Massachusetts]." Memorandum in Support of Motion to Dismiss at 18 (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)). Inc.'s contacts with this forum are significant, systematic and extensive, thereby providing an ample basis for the exercise of general jurisdiction.

Moreover, the exercise of personal jurisdiction over Inc. in Massachusetts is eminently reasonable. The Federal Circuit has not yet addressed the standard for making such a determination, but, in the specific jurisdiction context, it has held that if the exercise of jurisdiction otherwise would comport with due process, it is "unreasonable" only if the plaintiff's interest and the state's interest in adjudicating the dispute "are so far attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Akro Corp. v. Luker,* 45 F.3d 1541, 1549 (Fed.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995).

In the case at bar, Pharmachemie has strenuously reiterated its interest in adjudicating this dispute in Massachusetts, where its distributor, Astra U.S.A., Inc., is located. Opposition at 11. Moreover, Massachusetts has a substantial interest in adjudicating the dispute here, inasmuch as Astra anticipates significant annual revenues from the sale of the doxorubicin product. Particularly because Inc. engages in business throughout the United States, this Court cannot conclude that those interests are "clearly outweighed" by the burden upon Inc. to litigate in Massachusetts. Accordingly, Inc.'s Motion to Dismiss for lack of personal jurisdiction [Docket # 11] will be DENIED.

### III. Other Motions

There is no need to dwell upon the remaining outstanding motions:

1. Defendant Inc.'s Motion to Amend its Counterclaims [Docket # 82] will be ALLOWED and Pharmachemie's Motion to Dismiss Counts I and III of Inc.'s Counterclaim [Docket # 19] will, accordingly, be DENIED AS MOOT;

2. Pharmachemie's Motion to Compel [Docket # 39] will be DENIED;

3. Pharmachemie's Motion for Leave to Amend its Complaint to add a Bill of Discovery [Docket # 46] will be DENIED;

4. Pharmachemie's Motion for Sanctions [Docket # 57] will be DENIED; and

5. Defendant Inc.'s Motion to Compel Opinions of Counsel [Docket # 63] will be DENIED.

Finally, some comment is appropriate regarding the parties' cross-motions for a protective order.[8] This Court believes that the drafting of a mutually-agreeable protective order properly falls within the province of the parties, not the Court. Counsel are, therefore, ordered to renew their efforts to draft a mutually agreeable protective order without delay. The cross motions will, therefore, be DENIED without prejudice, subject to renewal by the parties if they are unable to resolve their differences within thirty (30) days from the date of this ORDER. If it becomes necessary for this Court to revisit and delve into this issue, it is likely that costs and attorneys' fees will be imposed upon the non-prevailing party.

### ORDER

For the foregoing reasons:

1) Pharmachemie's Motion for Leave to File a Supplemental Opposition to S.p.A.'s Motion to Dismiss [Docket # 74] is **ALLOWED;**

2) Defendant S.p.A.'s Motion to Dismiss [Docket # 9] is **ALLOWED;**

3) Defendant Inc.'s Motion to Dismiss [Docket # 11] is **DENIED;**

4) Defendant Inc.'s Motion to Amend its Counterclaims [Docket # 82] is **ALLOWED** and Pharmachemie's Motion to Dismiss Counts I and III of Inc.'s Counterclaim [Docket # 19] is, accordingly, **DENIED AS MOOT;**

5) Pharmachemie's Motion to Compel [Docket # 39] is **DENIED;**

6) Pharmachemie's Motion for Leave to Amend its Complaint to add a Bill of Discovery [Docket # 46] is **DENIED;**

7) Pharmachemie's Motion for Sanctions [Docket # 57] is **DENIED;**

8) Defendant Inc.'s Motion to Compel Opinions of Counsel [Docket # 63] is **DENIED;** and

9) the cross-motions for a Protective Order [Dockets # 42 and 43] are **DENIED WITHOUT PREJUDICE.**

So ordered.

---

**8.** Pharmachemie first filed its Motion for a Protective Order [Docket # 42] on August 30, 1995. The following day, Inc. filed an Opposition to plaintiff's Motion and requested this Court to enter an alternative protective order [Docket # 43].